

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-1995

# In Re: Unisys Corp (Mem Op)

Precedential or Non-Precedential:

Docket 94-1875

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"In Re: Unisys Corp (Mem Op)" (1995). *1995 Decisions.* Paper 176.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/176

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 94-1875

IN RE:  UNISYS CORP. RETIREE
MEDICAL BENEFIT "ERISA" LITIGATION

Unisys Corporation,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. MDL 969)

Argued
May 4, 1995
Before:  MANSMANN, SCIRICA and McKEE, <u>Circuit</u> <u>Judges</u>.

(Filed  June 28, l995)

Alan M. Sandals, Esquire
Berger & Montague
1622 Locust Street
Philadelphia, PA  19103


Joseph R. Roda, Esquire
36 East King Street
301 Cipher Building
Lancaster, PA  17602

J. Dennis Faucher, Esquire
Miller, Faucher, Chertow,
Cafferty & Wexler
One Penn Square West
Suite 1801
Philadelphia, PA  19102

Seymour J. Mansfield, Esquire
Mansfield & Tanick
900 Second Avenue South
Suite 1560
Minneapolis, MN  55402

Sarah E. Siskind, Esquire (Argued)
Davis, Miner, Barnhill & Galland
44 East Mifflin Street
Suit 803
Madison, WI  53703

       Counsel for Appellees
          Gerald E. Pickering, Fred Tonnies,
          William Leonhardt, Evelyn Schmidt,
          Dudley Keyes, David Kahl, Paul Wright,
          Robert Wilt, Clay Bernichon, Edward Valle,
          Robert B. Welsh, Solveig Tschann,
          Ludson F. Worsham, Edwin Marjala,
          Warren J. Hall, individually and on behalf of
          all members of the Sperry Class previously
          certified by the Court whose claims have not been
          settled

James F. Roegge, Esquire
Julie L. Levi, Esquire
Meagher & Geer
33 South Sixth Street
4200 Multifoods Tower
Minneapolis, MN  55402

       Counsel for Appellees
          Gerald E. Pickering, Fred Tonnies,
          William Leonhardt, Evelyn Schmidt,
          Dudley Keyes, David Kahl, Paul Wright,
          Robert Wilt, Clay Bernichon, Edward Valle,
          Robert B. Welsh, Solveig Tschann,
          Bernard J. Jansen, Donald I. Klippenstein,
          Frederick W. Hoppe

Joseph J. Costello, Esquire
Francis M. Milone, Esquire (Argued)
Morgan, Lewis & Bockius
2000 One Logan Square
Philadelphia, PA  19103

Joseph A. Teklits
UNISYS Corporation
P.O. Box 500
M.S. C2NW 14
Blue Bell, PA  19424

          Counsel for Appellant

              _____

OPINION OF THE COURT

_____

MANSMANN, Circuit Judge.

We are asked to decide whether a claim for breach of fiduciary duty may be maintained under section 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B), where, despite reservation clauses that the company retained the right to terminate the plans "at any time" and for "any reason," summary plan descriptions informed retired employees that the duration of their retiree medical benefits was for life, and company representatives misinformed employees that once they retired, their medical benefits would "be continued for the rest of your life." Because we hold that a breach of fiduciary claim may be maintained under these circumstances, we must also decide whether equitable relief is available under ERISA to individual plan participants. We hold that, assuming a breach of fiduciary duty can be proven, equitable relief is available to individual plan participants pursuant to 29 U.S.C. § 1132(a)(3)(B).

I.

This class action, filed on behalf of former employees of Sperry Corporation, arises out of the termination of post-retirement medical plans, sponsored by Unisys for retirees and disabled former employees of Unisys and its corporate predecessors, Sperry Corporation and Burroughs Corporation. The retirees sought to recover post-retirement medical benefits under

the terms of their benefit plans and under ERISA's provisions for appropriate equitable relief.

In September of 1986, Sperry Corporation and Burroughs Corporation merged to form Unisys Corporation. Prior to the merger, Sperry consisted of a number of business units or divisions. Until 1984 each Sperry division maintained its own medical benefits program, with each described in a separate summary plan description. In 1984, in an attempt to streamline the medical benefits plans and in response to rising medical costs, Sperry implemented Medflex, a corporate-wide medical benefits plan that applied to the entire Sperry Corporation.[14] Medflex was applied to future retirees only; existing retirees continued to receive coverage under the pre-Medflex plans which applied when they retired.

Following the merger in 1986, Unisys continued the Medflex plan for active employees and those who retired after its implementation but prior to April 2, 1989. Unisys also continued all of the pre-Medflex plans for those who retired prior to Medflex's implementation. In 1989, Unisys effected the consolidation of its retiree medical benefit plans when it created the Unisys Post-Retirement and Extended Disability Medical Plan to cover all employees who retired after April 1, 1989, most of whom were former Sperry and Burroughs employees.

---

[14]. Medflex applied to all Sperry business units by January 1, 1984, with the exception of one sub-group of the Sperry Division, which commenced participation in Medflex on January 1, 1985.

On November 3, 1992, Unisys publicly announced that effective January 1, 1993, it was terminating all existing medical benefit plans and replacing all of the pre-existing medical plans with the new Unisys Post-Retirement and Extended Medical Disability Plan. Under the new plan, retirees would be responsible for increasing levels of contributions until January 1, 1995, when they would have to pay the full cost of their premiums. Thus, the new plan sharply contrasted with earlier plans, under the majority of which Unisys paid the entire premium for an individual's life and provided benefits for the individual's spouse as well.[15]

---

[15]. Unisys' decision to terminate the benefit plans under which it had provided coverage and to replace those plans with the new Unisys Post-Retirement and Extended Disability Medical Plan was challenged in nine separate actions which the Judicial Panel on Multidistrict Litigation transferred to the Eastern District of Pennsylvania and consolidated for disposition. On June 9, 1993, after determining that Unisys "acted on grounds generally applicable to the class," the district court certified the case as a class action pursuant to Fed. R. Civ. P. 23(b)(2). The class consists of approximately 21,000 former non-union employees of Sperry, Burroughs and Unisys. The court certified three distinct classes: Unisys retirees, Sperry retirees or Burroughs retirees and the claims of each class were adjudicated separately. Further, the retirees asserted two sets of claims: general claims on behalf of all retirees, and separate claims on behalf of "early" retirees who retired under various early retirement incentive programs offered by the company throughout the 1980s.

This appeal concerns some of the claims of the Sperry regular retirees, and the claims of a sub-group of Sperry early retirees. The appeals docketed at Nos. 94-1800, 94-1801, 94-1912 and 94-2216 concern the claims of the Unisys and Burroughs retirees, as well as the remaining claims of the Sperry retirees. In appeal No. 94-1800 the Sperry regular retirees and certain early retirees have appealed from an adverse judgment rendered after trial on their claims for breach of contract and estoppel. The claims of the Burroughs early retirees and many of the claims

The appellees in this appeal are former employees of Sperry corporation (and their eligible dependents) who retired between 1969 and April 1, 1989, from Sperry Corporation or Unisys, Sperry's successor. Following Unisys' termination of their post-retirement medical benefit plans in late 1992, the retirees sought relief based on three theories: breach of contract, equitable estoppel, and breach of fiduciary duty. The Sperry retirees argued that Unisys' termination of their respective medical plans violated ERISA. They argued first that Unisys had denied them "vested" benefits in violation of 29 U.S.C. § 1132(a)(1)(B) because the summary plan descriptions ("SPDs") explaining their medical benefits contained the term "lifetime" benefits. Regarding their contract claims, the retirees relied on the explicit lifetime language in the plans, e.g., "when you retire, your medical benefit will be continued

(..continued)
of the Sperry early retirees were settled pursuant to a partial settlement agreement between Unisys and these retirees. In appeal No. 94-1801 the Unisys early retirees have appealed from an adverse judgment rendered after trial on their claims for breach of contract, breach of fiduciary duty and estoppel. In appeal No. 94-1912 the Burroughs and Unisys regular retirees have appealed from the district court's grant of summary judgment in favor of Unisys on their breach of contract and estoppel claims. In appeal No. 94-2166, a sub-group of Sperry retirees attempted to challenge the partial settlement between Unisys and the Sperry and Burroughs early retirees which did not include them. On October 3, 1994, we granted the parties' joint motion to consolidate appeals Nos. 94-1800, 94-1801, 94-1875 and 94-1912 for purposes of filing a single joint appendix and for disposition. All of these appeals have now been resolved, either by our decisions in published opinions, see Nos. 94-1800 and 94-1875, or by memorandum opinions rendered in Nos. 94-1801, 94-1912 and 94-2216.

for the rest of your life," and on statements to the same effect made by the company both orally and in writing.

The Medflex SPD is illustrative. A Sperry employee who retired during the period January 1, 1984, through April 1, 1989, received medical benefits under this plan. The SPD for medical benefits is set forth in a booklet titled, "Your Company and You." Included in this plan was the following description of retiree medical benefit coverage:

> If you're eligible, Medical Plan benefits continue without cost after you terminate active employment. Benefits also may continue on a contributory basis for your eligible dependents who are covered when your employment terminated. . . . Coverage continues for you for life and for your dependents while they remain eligible provided you don't stop the contributions for their coverage. After your death, your eligible dependents may continue coverage by making the require contributions. Their coverage continues until your spouse dies or remarries.

(A 2227)(emphasis added). Second, the retirees argued that even if Unisys had the legal right to terminate the plans (pursuant to the reservation of rights clause located in other sections of the plans), Unisys had breached its fiduciary duty by affirmatively misleading plan participants regarding the duration of their retiree medical benefits. Lastly, the retirees asserted claims based on equitable estoppel.[16]

---

[16]. The Sperry retirees' contract and estoppel claims are not implicated in this appeal. They are the subject of an appeal docketed at 94-1800.

Unisys' response to these arguments was that it had reserved the right to terminate the retirees' medical plans due to a "reservation of rights clause" or "ROR" located in another section of the plan. Typical of these clauses is the one set forth in the SPD describing the Medflex plan. The Medflex SPD booklet, "Your Company and You," was distributed to all employees and contained the following reservation of rights clause:

Plan Continuation

> The Company expects to continue the Plans, but <u>reserves the right to change or end them at any time</u>. The Company's decision to change or end the Plan may be due to changes in federal or state laws governing welfare or retirement benefits, the requirements of the IRS or ERISA, the provisions of a contract or policy involving an insurance company <u>or any other reason</u> . . . .

(A 2750) (emphasis added).

In addition to the provisions set forth in the SPDs, information about retiree medical benefits was also conveyed to the Sperry retirees through various informal oral and written communications. As in the SPDs, the duration of medical benefits was described as being "for life" or for the "lifetime" of the retiree and his or her spouse. Sperry did not include in these informal communications a reference to the reservation of rights clause.

Notwithstanding these communications, Unisys denied having created vested medical benefits through its use of the word "lifetime," and early in this litigation filed a motion for summary judgment seeking dismissal of all of the regular

retirees' claims based on the unambiguous reservation of rights clauses in the plans.[17]  On October 13, 1993, the district court granted summary judgment in favor of Unisys on the Sperry retirees' claim that Unisys had breached its fiduciary duties. In re Unisys, 837 F. Supp. at 670, 679-80 (E.D. Pa. 1993).

At the trial conducted on their contract claim, the Sperry retirees moved for reconsideration of their breach of fiduciary duty claim in light of our decision, rendered during trial, in Bixler v. Central Pa. Teamsters Health and Welfare Fund, in which we held that a direct action for breach of fiduciary duty is available under section 1132(a)(3)(B).[18] Bixler, 12 F.3d 1292 (3d Cir. 1994).  The retirees argued that "even if the reservation of rights clause in the SPDs were intended to apply to existing retirees [as opposed to active employees], Sperry and later Unisys, had a fiduciary duty to make this point clear."  (A 2284).  The district court observed:

---

[17].     Although the district court granted Unisys' motion on the retirees' breach of fiduciary duty and estoppel claims, it denied summary judgment on the retirees' contract claim.  The district court found that the internal inconsistency between the lifetime promises and the RORs made the Sperry plans ambiguous and that under Mellon Bank N.A. v. Aetna Business Credit, 619 F.2d 1001 (3d Cir. 1980), a trial on the extrinsic evidence was necessary to resolve the ambiguity.  In re Unisys, 837 F. Supp. at 679.  After trial, the district court reversed its position on both the contract and breach of fiduciary duty claims, entering judgment against the Sperry retirees on the contract claim and reversing its earlier dismissal of the breach of fiduciary duty claim.

[18].     The district court opined that the Sperry retirees had presumably brought their breach of fiduciary duty claim pursuant to the "other equitable relief" clause in 29 U.S.C. § 1132(a)(3)(B).

> This is not a case where one or two low level benefits counselors told a few retirees that their benefits would continue for life. The message that medical benefits would last for life was confirmed repeatedly and systematically throughout the Sperry organization, by all levels of management, in writing and verbally. In fact, as the Findings make clear, several high level corporate executives, as well as personnel managers, testified that they believed the [reservation of rights clause] was inapplicable to retirees and counseled individuals accordingly.

(A 2284). Although the district court also observed that the summary plan description is the controlling document upon which plan participants must rely and that informal communications cannot alter the terms of a written plan, the court discerned "a strong current in the Third Circuit that recognizes that an ERISA fiduciary may not `affirmatively mislead' plan participants." Id. (citing Bixler, 12 F.3d 1292, and Fischer v. Phila. Elec. Co., 994 F.2d 130 (3d Cir.), cert. denied, 114 S. Ct. 622 (1993)).

Unisys argued that Bixler, supra, and Fischer, supra, were inapposite in a situation where the summary plan description itself informs the participants of the answer to their inquiry regarding benefits. After reviewing Fischer and Bixler, the district court concluded that the evidence supported a breach of fiduciary duty claim. The court stated, "First, it is clear that the highest levels of corporate management at Sperry, and later Unisys, recognized that employees might be under the mistaken

belief that `lifetime' meant forever."[19]  The evidence suggested to the court that "by the mid-1980's, defendant understood the potential for confusion concerning the meaning of `lifetime benefits.'"  The court further observed that the "Defendant then exacerbated this potential [for confusion] with numerous informal communications that discussed lifetime benefits without explicit reference to the [reservation of rights clause]."[20]  (A 2289).

---

[19].     The court found that this was evidenced in part by a confidential letter in which John Loughlin, who was then staff Vice President, Employees Benefits for Sperry, wrote:

> It is important to determine the implied promise that has been made regarding post-retirement medical benefits.  Recent court cases have impaired the employer's ability to reduce these benefits after retirement.  The Company should consider how the promise can be limited so as to control the impact on Company costs of future medical inflation and Federal cost-shifting.

(A 2288).  The second letter upon which the district court relied was a confidential 1988 memorandum from J.A. Blain, then Vice-President of Human Resources for Unisys, to W.M. Blumenthal, then CEO of Unisys, which cautioned:

> Although we have not suggested to either active employees or current retirees that we may consider changes in Post Retirement Medical for those already retired, we feel our analysis would be incomplete if we did not address possible changes to the Post-Retirement Medical Plans of our 16,000 current retirees. . . . Many retirees will undoubtedly suggest that when they retired, they felt that their medical program would continue without changes. . . .

(A 2288).

[20].     The district court found that "Unisys could have easily put an explicit [reservation of rights clause] in each informal communication given to employees rather than only use the lifetime language; also, when employees made specific inquiries to benefit counselors during exit interviews and at group retirement sessions, the company could have instructed the

The court found that the retirees had presented credible testimony that some individuals specifically asked if their benefits would continue for life and were told they would, without any mention of the reservation of rights clause. (A 2290). When faced with a specific inquiry as to the explanation of benefits, the district court held that "an employer cannot give vague or incorrect answers, especially on a repeated and pervasive basis." Id. Because the breach of fiduciary duty claim was not directly before the court at trial, it did not hold that a breach in fact occurred. In granting reconsideration of this issue though, the district court concluded that "based on the evidence and the law in this circuit, it seems possible that at least some plaintiffs will be able to sustain a breach of fiduciary duty claim."[21] (A 2291). Given the complexity of the legal question involved and its uncertainty of the contours of Bixler, the district court certified its decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). On July 22, 1994, Unisys filed a petition for permission to appeal

(..continued)
counselors to tell prospective employees that although the word `lifetime' is used, the company always reserves its right to terminate the plans." (A 2289-90).

[21]. Because the court believed that some plaintiffs had stronger cases than others based on their specific inquiries and the information given to them personally, the court found that subclasses, and possibly even individual hearings, would be necessary to adjudicate the breach of fiduciary duty claims. The court did not express an opinion as to what damages would be recoverable and recognized that the parties would brief the issue at a later time.

pursuant to 28 U.S.C. § 1292(b).  We granted Unisys' petition on August 8, 1994.[22]

## II.

Section 404(a)(1) of ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ."  29 U.S.C. § 1104(a)(1).[23]  Recognizing this statutory obligation, we

---

[22].     The district court certified for immediate appeal and we accepted the following controlling questions of law:

> (a)  May a breach of fiduciary duty claim be maintained under ERISA where:
>
> (1)  the applicable summary plan descriptions ("SPDs") informed class members that the duration of retiree medical benefits was for life, but reservation clauses in the SPDs stated that the company reserved the right to terminate the plans at any time and for any reason; and
>
> (2)  company representatives misinformed class members that once they retired, their medical benefits would continue for life, as detailed in the Court's Opinion of June 23, 1994?
>
> (b)  Assuming that a breach of fiduciary duty claim may be maintained under the above circumstances, is equitable relief available to individual participants under ERISA?

[23].     ERISA broadly defines a fiduciary as any person who "exercises any discretionary authority or discretionary control respecting management of such plan . . . or has any discretionary authority in the responsibility in the administration of the plan."  29 U.S.C. § 1002(21)(A).

There is no question that both Sperry and later Unisys were acting as plan administrators, and thus were acting in a fiduciary capacity, when they made the material

have held that in the exercise of these duties, the fiduciary "may not materially mislead those to whom the duties of loyalty and prudence . . . are owed." Fischer, 994 F.2d at 135; Bixler, 12 F.3d at 1300; Curcio v. John Hancock Mutual Life Insurance Co., 33 F.3d 226, 238 (3d Cir. 1994).

In Fischer, we held that a plan administrator may not make affirmative material misrepresentations to plan participants about changes to employee benefit plans. Fischer involved employees who retired shortly before their employer offered an early retirement plan or "retirement sweetener." Although the company had announced that it might offer such a plan, when employees inquired about its availability, they were told by benefits counselors that "no plan was being considered." Fischer, 994 F.2d at 132. The benefit counselors were technically telling the truth, since they had not been informed by the corporation that a retirement sweetener was under serious

(..continued)
misrepresentations that support the claim for breach of fiduciary duty in this case. Our decisions firmly establish that when a plan administrator explains plan benefits to its employees, it acts in a fiduciary capacity. See, e.g., Genter v. ACME Scale and Supply Co., 776 F.2d 1180 (3d Cir. 1985) (holding that ACME Scale and Supply met the ERISA definition of fiduciary as an employer-administrator of the plan at issue); Fischer v. Phila. Elec. Co., 994 F.2d 130, 133 (3d Cir. 1993) (finding employer to have fiduciary status solely on the basis of its role as plan administrator under ERISA); Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1158 (3d Cir. 1990) (holding that when employers serve as plan administrators, they assume the role of fiduciary under ERISA). When a corporate plan administrator speaks about benefits to its employees, the administrator acts in a fiduciary capacity even if he speaks about a non-fiduciary decision such as the business decision to terminate a welfare benefit plan. See Hozier, supra.

consideration. Nonetheless, we held that a material issue of fact existed as to whether the employer had breached its fiduciary duty to its employees by responding in a misleading fashion to their questions about the sweetener. Id. at 135. We held that, "Put simply, when a plan administrator speaks, it must speak truthfully." Id.

We affirmed this principle in Bixler in holding that a plan administrator has an affirmative duty to "speak when it knows that silence might be harmful." There the widow of a plan participant contacted her husband's employer while the COBRA election period was still open, to ask whether there was a death benefit to which she was entitled. We held that:

> If [the employer's agent] knew that Mr. Bixler's death left Mrs. Bixler with substantial unpaid medical expenses and that she could receive reimbursement for those expenses under the Drivers' plan by signing and returning the COBRA notice that [he] had sent to her husband, we believe the failure to advise her of the available benefits might be found to be a breach of fiduciary duty despite the fact that her inquiry was limited to the availability of a death benefit.

12 F.3d at 1302. Although we did not decide whether a breach of fiduciary duty in fact occurred, we observed that the fiduciary's duty to inform "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Id. at 1300. Significantly, we held that the employer's failure to advise Mrs. Bixler regarding her COBRA rights could constitute a breach of its fiduciary duty even though the employer had previously

provided the information in a written COBRA notice[24] and even though the employer's omission in that case concerned facts about which Mrs. Bixler had not specifically inquired.

Similarly in Curcio v. John Hancock Mutual Life Insurance Co., 33 F.3d 226 (3d Cir. 1994), we held that an employer's misrepresentations regarding the existence of supplemental accidental death and dismemberment insurance, in representations made to employees during solicitations for enrollment in a new life insurance program which provided only for supplemental life insurance, established a breach of fiduciary claim. See also Smith v. Hartford Ins. Group, 6 F.3d 131 (3d Cir. 1993) (employer's erroneous representations that Smith would receive some level of coverage under new plan gives rise to a breach of fiduciary duty claim under ERISA); Taylor v. Peoples Natural Gas Co., 49 F.3d 982 (3d Cir. 1995) (a plan administrator may be liable for the material misrepresentations made by individuals who have been selected as non-fiduciary agents by the plan administrator to assist it in its fiduciary obligation to administer a plan).

Unisys argues that the district court's decision in this case is based on an unwarranted extension of our holding in Bixler. Unisys points to the fact that Sperry and later Unisys

---

[24]. Mrs. Bixler received the requisite notice that she had a right to elect "COBRA" contribution coverage at her own expense, but she did not do so, believing that the COBRA notice did not apply to her since her husband was already in the hospital and she mistakenly believed that this precluded him from being eligible for coverage. Bixler, 12 F.3d at 1302.

unambiguously advised employees in summary plan descriptions that the company had reserved the right to terminate its retiree medical benefit plans.  Thus, Unisys contends that Bixler did not address the principal issue in this appeal which Unisys frames as "whether an employer has a fiduciary duty to remind its employees of its right to modify or terminate a benefit plan when it already disclosed that information in an SPD."  Appellants' brief at p. 19.  We reject Unisys' characterization of the fiduciary duty involved as "one to remind" and of the cases upon which Unisys relies.

Under ERISA, fiduciaries have certain duties which include "the disclosure of specified information."  Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 142-45 (1985).  A fiduciary's statutory disclosure obligations are set forth in ERISA, 29 U.S.C. §§ 1102, 1021 and 1022.  Under 29 U.S.C. § 1102(a)(1), "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument . . . ."  Under section 1022(a), "[a] summary plan description of employee benefit plan is to be furnished to plan participants" and the plan description "shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1).  Further, ERISA requires that the summary plan description "explain the circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," 29 U.S.C. § 1022(b), "in a manner that is calculated to be understood by the average plan participant."  29 U.S.C. §

1022(a)(1).[25]  A summary plan description "must not have the

effect [of] misleading, misinforming or failing to inform

[25].      § 1021.     **Duty of Disclosure and Reporting**

(a)   Summary plan description and information to
      participants and beneficiaries

The administrator of each employee benefit plan
shall cause to be furnished in accordance with
section 1024(b) of this title to each participant
covered under the plan and to each beneficiary who
is receiving benefits under the plan --

(1)  a summary plan description described
in section 1022(a)(1) of this title; and

*    *    *    *

§ 1022.    **Plan Description and summary plan description**

(a)(1)  A summary plan description of any employee
benefit plan shall be furnished to participants
and beneficiaries as provided in section 1024(b)
of this title.  The summary plan description shall
include the information described in subsection
(b) of this section, shall be written in a manner
calculated to be understood by the average plan
participant, and shall be sufficiently accurate
and comprehensive to reasonably apprise such
participants and beneficiaries of their rights and
obligations under the plan.  A summary of any
material modification in terms of the plan and any
change in the information required under
subsection (b) of this section shall be written in
a manner calculated to be understood by the
average plan participant and shall be furnished in
accordance with section 1024(b)(1) of this title.

*    *    *    *

(b)  The plan description and summary plan
description shall contain the following
information:  The name and type of administration
of the plan; the name and address of the person
designated as agent for the service of legal
process, if such person is not the administrator;
the name and address of the administrator; names,

participants and beneficiaries."  29 C.F.R. § 2520-102-2(b)
(1987).

Unisys argues that we should reject the notion that
Bixler can be interpreted as imposing a broad duty to inform
"upon a fiduciary that has satisfied its statutory disclosure
obligations."  Unisys is correct that we have held that a
fiduciary may satisfy its statutory disclosure obligations
regarding the terms of a plan by distributing a summary plan
description that complies with ERISA.  See, e.g., Stahl v. Tony's
Bldg. Materials Inc., 975 F.2d 1404 (9th Cir. 1989) (holding
employee trust fund did not breach its fiduciary duty to a union
member by failing to warn him individually that his pension
benefits could be drastically reduced where the rule that applied
was adequately explained in the summary plan description); Allen

(..continued)
titles, and addresses of any trustee or trustees
(if they are persons different from the
administrator); a description of the relevant
provisions of any applicable collective bargaining
agreement; the plan's requirements respecting
eligibility for participation and benefits; a
description of the provisions providing for
nonforfeitable pension benefits; circumstances
which may result in disqualification,
ineligibility, or denial or loss of benefits; the
source of financing of the plan and the identity
of any organization through which benefits are
provided; the date of the end of the plan year and
whether the records of the plan are kept on a
calendar, policy, or fiscal year basis; the
procedures to be following in presenting claims
for benefits under the plan and the remedies
available under the plan for the redress of claims
which are denied in whole or in part (including
procedures required under section 1133 of this
title).

v. Atlantic Richfield Retirement Plan, 480 F. Supp. 848 (E.D. Pa.
1979), aff'd, 633 F.2d 209 (3d Cir. 1980) ("Congress did not
intend to impose a duty to provide the kind of individualized
attention urged by plaintiff here, but rather envisioned that a
fiduciary could discharge its obligations through the use of an
explanatory booklet"); Schlomchik v. Retirement Plan of
Amalgamated Ins. Fund, 502 F. Supp. 240 (E.D. Pa. 1980), aff'd,
671 F.2d 496 (3d Cir. 1981) ("no duty on the part of defendants
to provide this particular employee with individualized attention
. . . ."); Schiffer v. Equitable Assurance Sec. of the U.S., 838
F.2d 78 (3d Cir. 1988) (rejecting argument that a fiduciary owed
an obligation to a beneficiary to explain the terms of a written
plan).  These cases, however, are inapplicable here.  In each of
them, breach of fiduciary duty claims were rejected because the
plan documents clearly explained the benefits in question; none
involved allegations that a breach of fiduciary duty had occurred
because a plan administrator had affirmatively and materially
misrepresented the terms of a plan.  Furthermore, satisfaction by
an employer as plan administrator of its statutory disclosure
obligations under ERISA does not foreclose the possibility that
the plan administrator may nonetheless breach its fiduciary duty
owed plan participants to communicate candidly if the plan
administrator simultaneously or subsequently makes material
misrepresentations to those whom the duty of loyalty and prudence
are owed.

Contrary to Unisys' claim, this is not a case involving
an employer's "duty to remind".  Instead, this case is more

accurately characterized as a dispute over an employer's duty, as an ERISA fiduciary, not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures. In the present context, a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision. Fischer v. Philadelphia Elec. Co., 994 F.2d at 135. Here the district court found that Unisys affirmatively and systematically represented to its employees that once they retired, their medical benefits would continue for life -- even though as the district court concluded in rejecting the retirees' contract claim, the plans clearly permitted the company to terminate benefits.[26] We have no doubt that the conduct Unisys engaged in, based on the findings of the district court, would constitute a breach of fiduciary duty in its most basic form. Our decisions in Bixler, Fischer, Curcio and Smith firmly establish that when a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information

_____

[26]. We have previously held that the Sperry retirees did not have a claim for relief based on breach of contract due to the unambiguous language of the reservation of rights clauses. See In re Unisys, No. 94-1800, slip opinion (3d Cir. June 28, 1995). This decision does not foreclose the retirees' claims for relief based on a breach of fiduciary duty. In Curcio, supra, we upheld Mrs. Curcio's claim for breach of fiduciary duty, even though we had rejected her contract claim arising out of the same set of circumstances. See also Howe v. Varity Corp., 36 F.3d 746, 753 (8th Cir. 1994), cert. granted, 115 S. Ct. 1792 (April 24, 1995) (Howe I, in which plaintiffs' contract-type claims that benefits had vested were rejected, does not bar plaintiffs from urging in Howe II that they were entitled to relief on the basis of breach of fiduciary duty or estoppel).

when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries.

Imposing upon an employer a fiduciary duty in this case does not threaten or contradict our well-established policy disfavoring informal plan amendments.[27]  We recently recognized

---

[27].     Unisys argues that we recently recognized the "troubling implications" of a misrepresentation claim based upon alleged oral misrepresentations to plan participants where accurate information was available in a summary plan description. (Unisys brief at pp. 31-32).  Unisys directs our attention to a footnote in our decision in Haberern v. Kaupp Vascular Surgeons Ltd Defined Benefit Pension Plan, 24 F.3d 1491, 1501 n.6 (3d Cir. 1994) in which we stated:

> Thus, we do not reach the question whether Haberern's misrepresentation argument could be upheld under Section 502(a)(3).  [citation omitted].  We do note, however, that Haberern's misrepresentation argument has troubling implications because the summary plan description pages given to her made it clear that the retirement benefit was based on compensation and the compensation did not include bonuses.  [citations omitted].  Of course, the summary plan description mirrored the plan itself.  Thus, Haberern effectively is relying on parol evidence to contradict clearly defined terms of a plan revealed to her in writing.  Accordingly, if we adopt her approach we will create a precedent for any beneficiary to make claims for benefits beyond those provided in a plan.  It would be difficult to reconcile that result with our cases holding that oral or informal amendments to ERISA benefit plans are precluded.  See Confer v. Custom Eng'g Co., 952 F.2d 41, 43 (3d Cir. 1991); Frank v. Colt Indus. Inc., 910 F.2d 90, 98 (3d Cir. 1990); Schoonejongen v. Curtiss-Wright Corp., 18 F.3d 1034, 1040 (3d Cir. 1994), rev'd and remanded on other grounds, ___ U.S. ___, 115 S. Ct. 1223 (1995) ("Unless and until the written plan is altered in a manner, and by a

in Curcio, supra, that our equitable theories of relief under ERISA (breach of fiduciary duty and estoppel) are "not to be construed as conflicting with our precedent precluding oral or informal amendments to ERISA benefit plans. 33 F.3d at 236 n.17.

The retirees here do not argue that Unisys' misrepresentations modified their retiree medical benefit plans. Rather, for purposes of their breach of fiduciary claim, they assume the plans did not contractually vest benefits, and claim instead that the company breached its fiduciary duty by leading employees to believe that the plans did. This claim is distinct from a claim for benefits under the terms of the plan because it requires different proof (proof of fiduciary status, misrepresentations, company knowledge of the confusion and resulting harm to the employees) than would be required for a contract claim that the plans had been modified.

In recognizing the retirees' breach of fiduciary claim here, we do not intend to "create a precedent for any beneficiary to make claims beyond those provided in a plan." See Haberern, 24 F.3d 1492, 1501 n.6 (3d Cir. 1994). However, the facts and circumstances in this case clearly warrant our recognition of a

(..continued)
        person or persons authorized in the plan,
        neither the plan administrator nor a court is
        free to deviate from the terms of the
        original plan.").

However, as the district court in Haberern observed, Haberern's claim (with respect to her bonus) was brought pursuant to section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) and not under section 1132(a)(3)(B), the provision of ERISA pursuant to which the retirees' claims are brought here.

claim of a fiduciary breach.  Here the district court found that virtually the entire company management had consistently misrepresented the plan, not just on one occasion or to one employee, but over a period of many years and both orally (in group meetings) and in writing (in newsletters) as well.  Under these circumstances, we do not find a conflict with our policy against informal plan modification.[28]

---

[28]  Finally, Unisys attempts to distinguish Bixler from this case "because in Bixler, the information which allegedly was not supplied to the participant involved current facts which if brought to the attention of the participant, would have avoided a current loss of benefits under the plan."  Unisys thus urges us to limit Bixler's application to a breach of fiduciary duty based upon a failure to disclose present circumstances that may affect an employee's present right to specific benefits under the terms of a plan.  Unisys maintains that there is no evidence that at the time of the oral and written communications regarding retiree medical benefit coverage, anyone within the company knew that Unisys would be terminating its retiree medical benefit plans in November, 1992. (See Appellants' brief at pp. 35-36: "at the time the lifetime benefits were provided to retirees the company was not anticipating discontinuing them.")

We have previously held that ERISA does not "impose a duty of clairvoyance" under which employers would be required to advise participants and beneficiaries of the risk of plan changes not even being contemplated.  See Curtiss-Wright, 18 F.2d at 1042, n. 7.  See also Fischer, 994 F.2d at 135 (an ERISA fiduciary is under no obligation to offer precise predictions about future changes to its plan).  Our holding today should not be interpreted as creating a fiduciary obligation to predict and disclose future possibilities or potentialities to plan participants.

We accept Unisys' contention that at the time lifetime benefits were promised, no one at Sperry ever intended or anticipated that there would one day be the need to reduce or eliminate retiree medical benefits.  Nonetheless, an ERISA fiduciary does have an obligation to "answer participants' questions forthrightly," Fischer, 994 F.2d at 135, and "a duty to communicate complete and accurate information about a beneficiary's status."  Eddy v. Colonial Life Insurance, 919 F.2d 746, 751 (D.C. Cir. 1990).  This was the obligation that was

We turn now to the evidence adduced at trial on the breach of contract claim to see if sufficient evidence would support the other elements of the breach of fiduciary duty claim, specifically, Unisys' knowledge that its employees were mislead by Unisys' misrepresentations and Unisys' knowledge that its misrepresentations were material to the beneficiaries' circumstance because the misrepresentations influenced their decisions to retire.

(..continued)
breached in this case.  The district court found that the retirees had presented credible testimony that some individuals specifically asked if their benefits would continue for life and were told they would, without any mention of the reservation of rights clauses.  (A 2290 n.69).  Employees were told, "Once you retire and take your first pension check from the company . . . that's it."  (A 2534).  Thus, while Unisys may not have anticipated ending the plans, it knew that it had the ability to do so and it knew that its employees were receiving answers to their specific inquiries that were vague, misleading and contradictory.

Unisys' situation was not completely unanticipated. Indeed, the company had the foresight to draft and incorporate reservation of rights clauses into its retiree medical plans, which expressly gave the company the right to terminate the plans if they became onerous.  Unisys was aware of the retirees' confusion regarding the applicability of these clauses to their benefits and the retirees' mistaken belief that their benefits could not be terminated once an employee retired.  Under these circumstances, we find a duty to convey complete and accurate information arose.

III.

In detailed and well-supported findings, the district court found that Unisys had knowledge that its employees believed the assurances of lifetime benefits they had been given and were making retirement decisions based on their understanding that when they retired, the benefits that they had at the time they retired would continue for life.  Uncontroverted evidence established that Unisys' executives were aware that the lifetime medical benefit was an important consideration for employees who were considering when to retire.  This evidence established that the company knew that employees accelerated their retirement plans because of the belief that by retiring at a certain point in time, they would "lock in" the lifetime coverage that they had under the current plan.[29]  Further, the district court found that once Unisys was aware of the fact that retirees were electing to retire based on this understanding, Unisys failed to do anything to correct the misinformation, and instead reinforced the misunderstanding by continuing to repeat the same assurances that upon retirement a retiree's benefits would continue for life.

---

[29]. The district court quoted testimony from Sperry's former Senior Vice President for Personnel, Frank Sweeten, who acknowledged that the lifetime promises made by Unisys to retiring employees was an influence in retirement decisions:

> We said that this is yours for life.  You have got it for life.  And people made decisions on that.  They decided whether to go [i.e., retire] or not go on the basis that they were told this is for life.

(A 2230 n.19).

The district court found that the company, both actively and affirmatively, systematically misinformed its employees about the duration of their benefits by stating over and over again, without qualification, that their benefits would continue for life:

> There is no question that the defendant routinely spoke of the medical benefits as continuing "for life". This message was conveyed time and time again throughout informal communications that were sent out to retirees, and by oral statements that were made to these individuals both at private exit interviews and in group retirement sessions.

(A 2281-82). In addition to these communications in individual correspondence and company newsletters, the district court also cited examples of evidence that Unisys consistently responded to specific inquiries about whether a retiree's benefits could change by telling employees that they could not. (A 2290).

Given these findings, we hold that the district court did not err as a matter of law in concluding that the duty to convey complete and accurate information that was material to its employees' circumstance arose from these facts since the trustees had to know that their silence might cause harm. The district court's findings that the company actively misinformed its employees by affirmatively representing to them that their medical benefits were guaranteed once they retired, when in fact the company knew this was not true and that employees were making important retirement decisions relying upon this information, clearly support a claim for breach of fiduciary duty under ERISA.

We turn now to the remaining issue in this appeal, whether relief is available to individual plan participants under ERISA.

IV.

In Bixler v. Central Pa. Teamsters Health-Welfare Fund, 12 F.3d 1292 (3d Cir. 1993), we held that where a fiduciary breach causes harm to a beneficiary, that beneficiary has a claim for equitable relief pursuant to section 502(a)(3) of ERISA, which authorizes suits by participants for "appropriate equitable relief" to redress violations of ERISA.[30] Relying on our

---

[30]. Section 502 of ERISA provides:

(a) Persons empowered to bring a civil action

A civil action may be brought --

(1) by a participant or beneficiary --

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief

decision in Bixler, the district court concluded that equitable

relief was available to individual plan participants for breach

of fiduciary duty under section 502(a)(3)(B).

In Bixler, we considered both the source and the scope

of an ERISA fiduciary's duty to one of its beneficiaries and held

that a direct action for breach of fiduciary duty exists in the

"other appropriate equitable relief" clause of section

502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B).  Recognizing

that "undoubtedly there will be instances in which a fiduciary's

actions harm an individual beneficiary, but do not harm the

plan," we adopted the approach of Justice Brennan's concurrence

in Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134

(1985) to hold that "section 502(a)(3) authorizes the award of

`appropriate equitable relief' directly to a participant or

beneficiary to `redress' any act or practice which violates any

provision of this title including a breach of the statutorily

created fiduciary duty of an administrator."  Bixler, 12 F.3d at

1298 (citing Massachusetts Mutual, 473 U.S. at 153).[31]  We held

(..continued)
> (i) to redress such violations or (ii) to
> enforce any provisions of this subchapter or
> the terms of the plan. . . .

[31].      In Massachusetts Mutual, the Supreme Court addressed
the question whether an ERISA fiduciary could be held personally
liable to a participant or beneficiary for extra contractual
damages caused by the improper or untimely processing of benefits
claims.  The plaintiff had sued only under ERISA's fiduciary duty
section, section 409(a), and its civil enforcement section,
section 502(a)(2); thus the court's holding was similarly
limited.  After examining the statutory language of these
provisions, Justice Stevens, speaking for the majority,
concluded:  "The entire text of section 409 persuades us that
Congress did not intend that section to authorize any relief [for

that the principles of section 404(a), which serve as the touchstone for understanding the scope and object of an ERISA fiduciary's duties, are given effect by section 502(a)(3) which, in the language of the statute, authorizes the award of "appropriate equitable relief" <u>directly</u> to a participant or beneficiary to redress any act or practice which violates the provision of ERISA.  We observed, of course, that this relief is independent of that established in section 409, authorizing recovery for breach of fiduciary duty on behalf of the plan.

Unisys suggests that our conclusion in <u>Bixler</u> is called into question by the Supreme Court's decision in <u>Mertens v. Hewitt Assoc.</u>, ___ U.S. ___, 113 S. Ct. 2063 (1993), in which the Supreme Court held that money damages are not available under

(..continued)
breach of fiduciary duty] except for the plan itself."
<u>Massachusetts Mutual</u>, 473 U.S. at 144.

Justice Brennan, joined by Justices White, Marshall and Blackmun, wrote separately to emphasize the limited reach of the majority opinion and to outline the proper approach for courts to take in construing other ERISA provisions.  In full agreement with the majority that section 409 did not authorize recovery to an individual, Justice Brennan explained that individual recovery for breach of fiduciary duty is available elsewhere in the statute, in the "other appropriate equitable relief" clause of section 502(a)(3), reasoning that allowing an injured beneficiary recourse through the courts is essential to fulfilling the purpose of ERISA.  Explaining that Congress intended this result, Justice Brennan found the fundamental purpose of the statute was the "enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries."  473 U.S. at 158.  <u>See</u> <u>also</u> <u>id.</u> at 152-53, <u>citing</u> H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 5030, 5106 (emphasizing that section 502 permits beneficiaries to bring a "civil action to recover benefits due under the plan, to clarify rights to receive future benefits under the plan, and <u>for relief from breach of fiduciary responsibility</u>") (emphasis added).

section 502(a)(3), which, by its very terms, authorizes only equitable relief. Although Unisys acknowledges that the Supreme Court in Mertens never addressed the question of whether, in the event of a breach of fiduciary duty, a plan participant could seek equitable relief on his own behalf (rather than on behalf of a plan), Unisys maintains that the Supreme Court in Mertens expressed an unwillingness to infer causes of action in the ERISA context. See id. at 2067.[32]

We do not read Mertens as precluding the retirees' claim for equitable relief. In a post-Mertens decision, the Court of Appeals for the Seventh Circuit reached the same conclusion and reversed the district court's holding that individual relief was not available under section 502(a)(3), holding instead, based on Mertens, that section 502(a)(3) authorized such relief. Anweiler v. Amer. Elec. Power Serv. Corp., 3 F.3d 986, 993 (7th Cir. 1994).

> In Mertens, the Court held that the "appropriate equitable relief" in section [502(a)(3)] included only typical remedies available in equity and not "legal remedies" like compensatory damages or monetary relief. The court limited its holding to the "narrow

---

[32]. Unisys observes that we did not mention Mertens in our opinion in Bixler, and that two other courts since Mertens have held that only the plan, and not individual plan participants or beneficiaries, are entitled to relief for a breach of a fiduciary duty based on their conclusion that the sole and exclusive bases for such relief are sections 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132(a)(2). See Richards v. General Motors Corp., 850 F. Supp. 1325 (E.D. Mich. 1994), and Kaiser Permanente Employees Pension Plan v. Bertozzi, 849 F. Supp. 692, 700 (N.D. Cal. 1994) (concluding that recovery under section 502(a)(3) is limited to "relief that inures to the benefit of the plan as a whole").

battleground" chosen by the parties and decided the issue of "what forms of relief are available" under section 1132(a)(3), not to whom the relief can go or whether a remedial wrong had even been alleged. Nevertheless, Mertens clearly indicates the importance and availability of equitable relief. Moreover, the Secretary of Labor in an amicus curiae brief argues [that] Mertens dictates the availability of relief to an individual under section 1132(a)(3) for a fiduciary's breach of duty. Therefore, in light of Mertens and in deference to the Secretary's interpretation of the law which he is authorized to enforce, we hold that an individual may seek equitable relief from a breach of fiduciary duty under Section 1132(a)(3).

Id. (citations omitted). The Court of Appeals for the Eighth Circuit reached the same result in Howe v. Varity Corp., 36 F.3d 746 (8th Cir. 1994), cert. granted, 115 S. Ct. 1792 (April 24, 1995).[33] Thus, our decision in Bixler is consistent with the

_____

[33]. Interestingly, the Court of Appeals in Howe relied on Mertens to vacate the district court's award of punitive and compensatory damages, but upheld its equitable remedies in the form of monetary restitution for back benefits and an injunction restoring future benefits under the plaintiffs' former medical plan. With respect to Mertens, the court of appeals opined:

Mertens simply holds that only "equitable relief" is available under section 502(a)(3), 29 U.S.C. § 1132(a)(3), and that this phrase does not include the collection of damages from persons who are not fiduciaries but act in concert with those who are fiduciaries. Nothing in Mertens precludes an award of traditional equitable relief, including an injunction, restitution, and the like. As plaintiffs now concede . . . after Mertens, compensatory damages are not recoverable under section 1132(a)(3). But the case by no means bars equitable relief for individual participants who have suffered a breach of trust.

decisions of the Courts of Appeal for the Seventh and Eighth Circuits.[34] Accordingly, we reaffirm our conclusion in Bixler that equitable relief running to an individual falls within the scope both of section 1132(a)(3)'s language and of ERISA's broad remedial purpose. See 29 U.S.C. § 1001(b).

A question left unanswered by Bixler is the form of equitable relief available under section 502(a)(3). Both the district court and the Sperry retirees agree that the retirees are not entitled to money damages for a breach of fiduciary duty. Instead, the retirees seek an injunction ordering specific performance of the assurances Unisys made, restitutionary reimbursement for back benefits, and restoration of the status quo ante for the Sperry early retirees by rescinding their retirement agreements. These are remedies which are restitutionary in nature and thus equitable. See Curcio, 33 F.2d at 238-39 ("[W]e hold that Mrs. Curcio's alternate argument [that Capital Health breached its fiduciary duty] provides additional support for our conclusion that Capital Health is liable to Mrs. Curcio for the $150,000 in supplemental AD&D", representing full enforcement of the promise that had been made); Howe v. Varity Corp., 36 F.3d at 756 (award of monies plaintiffs would have received if they had remained members of the M-F plan could not properly be characterized as damages; rather, the payments were

---

[34]. The Court of Appeals for the Ninth Circuit, in a pre-Mertens decision, held to the contrary. Sokol v. Bernstein, 803 F.2d 532 (9th Cir. 1986) (beneficiary was not entitled to recover extra contractual damages for emotional distress caused by arbitrary and capricious acts of plan trustee).

restitution).  It will be for the district court to determine which of these remedies are appropriate under the circumstances of these individual claims.

## V.

For the foregoing reasons, the order of the district court dated June 23, 1994, reinstating the retirees' claims for breach of fiduciary duty which was certified for appeal pursuant to 28 U.S.C. § 1292(b) by order entered July 12, 1994, will be affirmed.  This cause is remanded to the district court for further proceedings.