BECKER, Circuit Judge,
concurring in part, dissenting in part:
Although I join in parts I and III of the majority’s opinion, I cannot agree with the conclusion that the majority reaches in part II as to the proper interpretation of the ERISA plan at issue. Unlike the majority, I do not believe that the plan administrator acted arbitrarily or capriciously in interpreting the plan to allow the distribution of benefits in the same month in which the termination of employment occurs.
I.
The relevant provisions of the ERISA plan at issue are Paragraphs 8.01 and 8.03, both of which are excerpted in the majority opinion. The plain language of the two paragraphs does not, as the majority contends, lead ineluctably to a single interpretation. Rather, when read together, the two paragraphs are ambiguous. On the one hand, Paragraph 8.01 requires that distribution of benefits be made “as soon as practicable after the end of the calendar month in which ... termination of employment occurs.... ” On the other hand, Paragraph 8.03 requires that, when he is notified that a beneficiary is due benefits, the Trustee of the plan will distribute the benefits “as soon as is reasonably practicable.” Paragraph 8.03 goes no further in describing when the distribution is to be made.
Therefore, assuming that a beneficiary is entitled to a distribution, there is the possibility of conflicting demands on the Trustee. If, as was the case here, it was reasonably practicable for the Trustee to distribute the benefits before the end of the calendar month in which the termination occurred, is the Trustee to wait for the month to end, as Paragraph 8.01 suggests, or, is the Trustee to distribute the benefits when they are ready, as Paragraph 8.03 suggests?
In my view, given the ambiguity inherent in Paragraphs 8.01 and 8.03, the plan administrator did not act arbitrarily or capriciously in interpreting the plan to mean that distribution of benefits would occur in this ease as soon as reasonably practicable. Certainly, the language itself allows for this as one possible reading of the plan. This is especially so because it is sound policy and makes good sense to encourage plan administrators to distribute benefits due beneficiaries sooner rather than later. More often than not, beneficiaries need their benefits immediately; delaying distribution might be highly detrimental.[1] Requiring the plan administrator to wait to distribute the benefits until the end of the calendar month in which the termination of employment occurs would inject unnecessary delay into a process that should function expeditiously.
In sum, I cannot fault the plan administrator for expediting the distribution of Dewitt’s *525 benefits in this ease.[2] I would therefore affirm the judgment of the district court in all respects.

. Although she did not communicate her need to her employer, Dewitt’s own situation provides an example. Dewitt stated in her deposition that she needed her distribution almost immediately. She did not know how long she would be out of a *525 job, and she wanted to help her son, who had just entered college, with his tuition.

. I am troubled by Raad’s failure to inform Dewitt that if she were to wait until after the Valuation Date to fill out a request for a distribution of her benefits she would be ensured of receiving a greater distribution. However, as the majority notes supra in footnotes 3 and 5, Dewitt failed to allege facts sufficient to show that Raad stood in a fiduciary relationship to her. Moreover, even assuming such a fiduciary relationship, Raad did not have a duty to inform Dewitt that waiting to request a distribution might be beneficial; Dewitt did not allege that she made known to Raad any facts that would create such a duty. See In re Unisys Corp. Retiree Medical Benefit “ERISA" Litig., 57 F.3d 1255, 1261-67 (3d Cir.1995) (describing the scope of the affirmative fiduciary duty to provide ERISA beneficiaries with information about the ERISA plan); Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1301-03 (3d Cir.1993) (same).