Walter P. GRAMM, Plaintiff,

v.

BELL ATLANTIC MGT.,
et al., Defendants.

No. CIV. 95–4889(JAG).

United States District Court,
D. New Jersey.

Nov. 6, 1997.

Arthur C. Hopkins, Jr., Clifton, NJ, for Plaintiffs.

Robert A. White, Morgan, Lewis & Bockius, Princeton, NJ, Steven D. Spencer, James N. Boudreau, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, for Defendants.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on the motion for summary judgment of defendants Bell Atlantic Management Pension Plan, Bell Atlantic Corporation, Bell Atlantic Network Services, Inc. and Bell Atlantic Separation Pay Plan and the cross-motion for summary judgment of plaintiff Walter P. Gramm ("Gramm").

## FACTS

Gramm worked for Bell Atlantic Corporation ("Bell Atlantic"), or one of its predecessors and/or affiliate entities,[1] from July 1, 1963 until April 1, 1993, the date he voluntarily retired under the terms of Bell Atlantic's 1992 Force Management Plan (hereinafter referred to as the "FMP"). Gramm Dep. at 15 (attached to Def. Ex. K and Pla. Ex. B)[2]. Since his retirement from Bell Atlantic on April 1, Gramm has worked as Director of Development for the Market Street Mission ("Market Street"), a non-profit organization[3] located in Morristown, New Jersey. Id. at 16.

While employed at Bell Atlantic, Gramm participated in the Bell Atlantic Management Plan (the "Pension Plan") and, by virtue of the FMP, also participated in the Separation Pay Plan (the "Pay Plan"). Complaint ¶ 3.[4] Bell Atlantic is the Plan Sponsor and Plan Administrator of the Pension Plan. Def. Ex. B at § 11. Bell Atlantic also maintains the

1. From December 26, 1991 to March 31, 1993, Gramm reported to Bell Communications Research (hereinafter "Bellcore"), as part of a rotational assignment. On March 31, 1993, Gramm was returned to Bell Atlantic–New Jersey, Inc. to retire under the terms and provisions of the pension plans of that affiliated company of Bell Atlantic. Pla. 12G at ¶¶ 4–5.

2. References in the form "Gramm Dep." are to the deposition of plaintiff Walter P. Gramm, sworn to on July 26, 1996. References in the form "Def. Ex._" are to the exhibits submitted by defendants in support of their motion for sum-

mary judgment. References in the form "Pla. Ex._" are to the exhibits submitted by plaintiff in support of his cross-motion for summary judgment.

3. Market Street "reaches out to the homeless with meals and emergency shelter ... [and also has] a ... rehabilitation and recovery program[.]" Pla. 12G ¶ 58.

4. A copy of the Complaint is attached as Def. Ex. A.

Pay Plan. Complaint ¶ 3. Bell Atlantic Corporate Employees' Benefit Committee is the Plan Administrator of the Pay Plan. Def. Ex. D. Both Plans grant its fiduciaries, including the Bell Atlantic Claims Committee (hereinafter, "Claims Committee") and the Bell Atlantic Benefit Appeals Committee (hereinafter, "Appeals Committee"), full discretion, with the advice of counsel, to interpret the respective Plans; to determine whether a claimant is eligible for benefits; to decide the amount, form and timing of benefits; and to resolve any other matters either raised by the claimant or identified by either Committee.

In mid-October 1992, Bell Atlantic instituted a FMP by which it offered eligible managers an opportunity to apply to retire or to terminate their employment voluntarily. Def. Ex. L. Under the terms of the 1992 FMP, managers who terminated their employment during a five-month "window" between August 31, 1992 and January 27, 1993 and who were eligible for a service or vested pension, were able to take advantage of certain temporary changes to the Pension Plan. Gramm satisfied the eligibility criteria for a service pension. Def. Ex. U at ¶ 8.[5] Specifically, in addition to the benefits normally provided under an FMP, the FMP provided eligible managers with a special cash payment for 1993 vacation and personal days. Id. at ¶ 9.

According to the Pay Plan, an employee would be eligible for benefits under the FMP if: (a) the employee is solicited in writing to volunteer for a FMP; (b) the employee voluntarily offers to terminate under the terms and conditions of the FMP before the applicable deadline; and (c) his or her offer to terminate employment is in turn accepted by Bell Atlantic's Vice–President–Human Resources. Def. Ex. D at 7. The original application deadline for participation in the 1992 FMP was November 13, 1992. However, Bell Atlantic extended this deadline. The first extension was to November 30, 1992 and ultimately to December 7, 1992. Id. at ¶ 12.

On November 23, 1992, Gramm received via facsimile a handwritten Pension Calculation Summary Sheet which stated that his 100% Lump–Sum Cash–Out amount was $543,203.54. Pla. Ex. C. On various occasions between November 23, 1992 and January 7, 1993, Gramm called the Bell Atlantic Benefits Window hotline;[6] Bell Atlantic established this telephone number to answer employee questions about the FMP. Ex. U at ¶ 17. On December 14, 1992, Gramm received the same November 23 Pension Calculation Summary Sheet in the mail; it had the same cash-out figure of $543,203.54[7]. Pla. Ex. D.

On December 15, 1992, notwithstanding that the deadline had passed on December 7,[8] Gramm filed a claim with the Claims Committee seeking to retire under the terms of the 1992 FMP. Def. Ex. at ¶ 20. On March 3, 1993, the Claims Committee granted Gramm's claim, authorizing him to retire under the terms of the 1992 FMP, id. at ¶ 26; however, up until this date (March 3),

---

5.  Def. Ex. U is a copy of the Joint Final Pretrial Order which includes a Joint Statement of Uncontested Facts.

6.  Gramm claims that he "repeatedly" asked people at the hotline whether the $543,203.54 figure for his pension calculation was correct and that "they said, yes." Gramm Dep. 95 (attached to Pla. Ex. B).

7.  Gramm noticed that the copy of the November 23 Pension Calculation Summary Sheet he received on December 14 did not include the Internal Revenue Code Section 415 Limits; as a result, on January 6, 1993, Gramm telephoned the hotline and inquired about the applicability of the Section 415 Limits to his pension calculations. On January 7, Gramm received a revised calculation sheet which contained the same cash-out amount of $543,203.54. Def. Ex. U at ¶¶ 19–22. Mattie Gordon from the Claims Committee testified at her deposition that she inserted the 415 Limits into the same pension calculation summary sheet that she had previously sent to Gramm but that she did not review any of the other figures in this document. Def. Ex. CC at 75.

8.  Gramm asserts that it was his understanding that the pension calculations for Bellcore rotationals were to be handled manually and that the "off the payroll date" for management employees retiring under the 1992 FMP was therefore December 15 rather than December 7, 1992. Def. Ex. U, Pla. 12G ¶ 13. Gramm also claims that he received his first set of pension calculations late and that he, therefore, had insufficient time to make the December 7, 1992 deadline. Pla. 12G ¶ 25.

Gramm understood that the Claims Committee could have denied his claim. Gramm Dep. at 98 (attached to Def. Ex. BB).

On March 11, 1993, Geraldine Bell, a representative of the Claims Committee, informed Gramm that his 100% cash-out amount had been mistakenly calculated because it had not taken into account the Plan's early retirement discount.[9] Def. 12G ¶¶ 41–42. Bell added that she would send him a revised pension calculation and that he should expect a reduction of approximately $50,000.00. Def. Ex. U at ¶ 32. Bell explained to Gramm that the reduction was due to an error in the calculation—i.e., the previous calculation had not taken into account the early retirement discount. Pla. 12G ¶ 62. Bell also told Gramm that he did not have to retire if he did not want to and inquired as to whether Gramm intended to continue with his retirement; Gramm responded that he would review the revised calculations but that he believed he had little choice but to proceed with the retirement. Bell advised Gramm that the effective date of his retirement would be April 1, 1993. Def. Ex. U at ¶ 33.

Between March 3 and March 11, 1993, Gramm took the following actions:

**9.** The summary plan description ("SPD") for the Pension Plan in this case states, in pertinent part, that: "If you retire on a Service Pension before you're 60 years old, your monthly pension amount may be reduced." Def. Ex. C at 9. The SPD then sets out what the reduction will be if an individual retires before attaining age 55 and 30 years of service. Id. at 9–10. Defendants claim that Gramm possessed this SPD and, therefore, was on notice that his 100% cash-out was subject to an early retirement reduction. Gramm claims that while at Bellcore he did not receive a SPD for either the Pension Plan or the Pay Plan. Gramm Dep. at 39–41 (attached to Pla. Ex. B). However, defendants argue that the record belies Gramm's assertion, pointing out that Gramm testified at his deposition that he previously had a copy of the SPD for the Pension Plan and that he had received documentation regarding his benefits at Bell Atlantic, although "that was part of [his] office at Bell Atlantic, and he left those documents for his successor." Gramm Dep. at 41–42 & 43–44 (attached to Def. Ex. BB). In addition, Bell Atlantic distributed early retirement materials to all Bell Atlantic managers, including those on rotation at Bellcore. Def. Ex. DD at 33, 64–65; Def. Ex. O at 13.

Most important, Gramm concedes that as of November 1992, he was aware that under the

(1) he informed his wife and his immediate family that his claim was allowed and that he therefore was eligible to retire from Bell Atlantic under the terms of the 1992 FMP;

(2) he told Market Street about the Claims Committee's decision and formally accepted the job as the Director of Development;

(3) he notified two customers of his decision to retire early and discussed their respective future support needs without him as the Project Leader; and

(4) he informed his immediate supervisor and several co-workers of the Claims Committee's decision and his consequent decision to retire early.

*See* Pla. 12G ¶¶ 54–61.[10]

On March 15, 1993, Gramm received his revised pension calculation, reflecting a lump sum cash-out amount of $488,885.57—a difference of $54,317.97 from the initial Pension Calculation Summary Sheet and the Bell Atlantic Benefits Window Hotline. Def. Ex. U at ¶¶ 34–35. On or about March 26, 1993, Gramm filed a claim with the Claims Committee to recover this $54,317.97 difference in his pension calculation. Id. at ¶ 37.[11] On

1992 FMP, the early retirement discount was not waived and that it applied to him. Def. Ex. U ¶ 14.

**10.** The parties also do not dispute that in March 1993, Gramm had one son in college and mortgages on two parcels of real estate. Def. Ex. U at ¶ 30.

**11.** The factual basis for Gramm's March 26 appeal was as follows: (a) he verbally verified the accuracy of the 100% lump sum cash-out amount of $543,203.54 and he had received three pension calculation summary sheets verifying this same amount; (b) he relied on both the verbal and written verifications and committed to retire under the 1992 FMP; (c) the decision to retire negatively impacted his career at Bellcore to the degree that he could not have elected not to retire having now been excluded from participation in major organizational changes within Bellcore; (d) his decision to retire and accept employment from Market Street Mission resulted in that organization's terminating a contract with a consultant they had previously utilized and if Gramm had not retired it would have caused them significant harm; and (e) the failure to retire would have placed high stress levels on Gramm's family because they were already com-

March 29, 1993, Gramm formally executed his FMP Early Retirement Application. *Id.* at ¶ 38. On April 1, 1993, Gramm retired from Bell Atlantic. *Id.* at ¶ 39. On or about May 23, 1993, the Claims Committee denied Gramm's claim concerning the reduction in his pension calculation. *Id.* at ¶ 40. On July 19, 1993, Gramm appealed the Claims Committee's denial to Bell Atlantic's Appeals Committee. *Id.* at ¶ 41.[12] On October 8, 1993, the Appeals Committee affirmed the Claim's Committee's denial of Gramm's claim concerning the reduction in his pension calculation. *Id.* at ¶ 42.

On June 30, 1994, Gramm filed a claim with the Claims Committee seeking to receive $6,339.00 as payment for the adverse tax consequences incurred by him as a result of receiving certain FMP payments in 1993 as opposed to 1992. Def. Ex. H. On December 12, 1994, the Claims Committee denied Gramm's June 30 claim. On April 14, 1994, the Appeals Committee advised Gramm that it had affirmed the Claims Committee's action with respect to his June 30 claim. Def. Ex. U at ¶ 44.[13]

On September 20, 1995 Gramm filed a Complaint with this Court alleging claims against the defendants [14] under ERISA [15] for equitable estoppel and breach of fiduciary duty.

## DISCUSSION

Fed.R.Civ.P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). In making this determination, the court must draw all reasonable inferences in favor of the non-movant. *Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 111 (3d Cir. 1994); *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1581 (3d Cir.1992).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir.1985). However, the party opposing the motion for summary judgment cannot rest on mere allegations and must instead present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243, 106 S.Ct. 2505, 2507, 91 L.Ed.2d 202 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir. 1995); *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.1991) (citing *Sound Ship Building Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.1976)); *see also Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990) ("unsupported allegations in [a plaintiff's] memorandum and pleadings are insufficient to repel summary judgment"); Fed.R.Civ.P. 56(e) (requiring non-moving party to "set forth specific facts showing that

mitted to the prospect of Gramm's retirement. Def. Ex. E.

12. In addition to the factual basis set forth in Gramm's March 26 appeal, Gramm's July 19 appeal added the detriment to Gramm in "the community of faith to which he belongs had he elected not to retire in light of being advised of the reduced 100% lump sum cash-out amount." Pla. 12G ¶ 73.

13. The parties do not dispute that Gramm has exhausted his administrative remedies with respect to his benefits claims for $54,317.97 (the deficiency on the lump sum) and $6,339.00 (the amount attributed to adverse tax consequences for receiving payment in 1993 as opposed to 1992) under the Pension Plan. Def. Ex. U at ¶ 46.

14. Gramm's Complaint initially named as defendants Bell Atlantic Management Plan, Bell Atlantic–New Jersey a/k/a/ New Jersey Bell Atlantic Telephone Company, Bell Atlantic Corporation and Mellon Bank, N.A. However, on August 13, 1996, a Consent Order was entered, substituting and dismissing parties Bell Atlantic–New Jersey a/k/a/ New Jersey Telephone and Mellon Bank, N.A., and amending caption to reflect this substitution and adding defendants Bell Atlantic Separation Pay Plan and Bell Atlantic Corporate Employees' Benefits Committee.

15. *See* Section 502(a)(1)(B), (a)(3)(B)(ii), (d)(1), (e) and (f) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(1)(B), (a)(3)(B)(ii), (d)(1), (e) and (f).

there is a genuine issue for trial."); "In other words, the inquiry involves determining, whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pitak v. Bell Atlantic Network Svcs., Inc.,* 928 F.Supp. 1354, 1366 (D.N.J.1996) (citations omitted).

### 1. *Equitable Estoppel*

■ In order to establish an equitable estoppel claim under ERISA, plaintiff must prove that: (1) defendants made a material misrepresentation to him; (2) upon which he reasonably relied; (3) to his detriment; and (4) "extraordinary circumstances." *Smith v. Hartford Ins. Group,* 6 F.3d 131, 137 (3d Cir.1993) (citing *Gridley v. Cleveland Pneumatic Co.,* 924 F.2d 1310, 1319 (3d Cir.1991)).

#### a. *Material misrepresentation*

In *Fischer v. Philadelphia Electric Co.,* the Third Circuit explains material misrepresentation, stating that:

> In the present context, a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire. Included within the overall materiality inquiry will be an inquiry into the seriousness with which a particular change to an employee pension plan is being considered at the time the misrepresentation is being made. All else equal, the more seriously a plan is being considered, the more likely a misrepresentation, e.g., that no change is under consideration, will pass the threshold of materiality.

**16.** Although both breach of fiduciary duty and estoppel claims were alleged by the plaintiffs in *Fischer I,* the Court in *Fischer I* was opining on whether or not an affirmative misrepresentation was "material" in its discussion of plaintiffs' breach of fiduciary duty claim. 994 F.2d at 135.

**17.** The district court below had granted summary judgment to the defendants. *Fischer v. Philadelphia Electric Co.,* 1992 WL 187107 (1992). The Court in *Fischer I* then reversed and remanded it for proceedings consistent with its opinion. 994 F.2d at 136.

994 F.2d 130, 135 (3d Cir.1993) ("*Fischer I*") (citations omitted).[16] However, it should be noted that the misrepresentation at issue in *Fischer I* had to do with defendant's failure to inform plaintiffs about an early retirement program; as a result, plaintiffs retired before this program was announced, making them ineligible to benefit from the change to the employee pension benefit plan. Moreover, the Court in *Fischer I* did not decide whether or not the misrepresentation was material but instead remanded it "for proceedings consistent with [its] ... opinion." *Id.* at 136.[17] On remand, the district court held in favor of those retirees who had asked about pension benefits and retired after such date. 1994 WL 194836.[18] On appeal in a related case,[19] the Court of Appeals held that whether defendant's statement "was a material misrepresentation turns on whether a change in benefits was in fact under consideration at the time the statement was made." 96 F.3d at 1548–49. The Court added that "serious consideration requires (1) a specific proposal (2) discussed for the purposes of implementation (3) by senior management with the authority to implement the change." *Id.* at 1549 (quoting *Fischer II* [20], 96 F.3d at 1541). In the end, the Court in *Kurz* applied the formulation of "serious consideration" established by the Third Circuit in *Fischer II* and entered judgment in favor of those plaintiff-retirees who had asked about changes in pension benefits after "serious consideration" began but before a formal announcement of the change was made. *Id.* at 1550.

#### b. *Reasonable detrimental reliance*

In *Hein v. Federal Deposit Ins. Corp.,* 88 F.3d 210 (3d Cir.1996), the plaintiff, a participant of an ERISA employee pension benefit plan, sued to obtain unreduced pension bene-

**18.** *See Fischer v. Philadelphia Elec. Co.,* 1994 WL 194836 (E.D.Pa. May 13, 1994).

**19.** *See Kurz v. Philadelphia Elec. Co.,* 96 F.3d 1544 (3d Cir.1996). *Kurz* and *Fischer* are related cases, involving two plaintiff classes against the Philadelphia Electric Company (PECO), for violations of ERISA out of changes made at two different time periods to PECO's pension plan.

**20.** *See Fischer v. Philadelphia Elec. Co.,* 96 F.3d 1533 (3d Cir.1996) ("*Fischer II*").

fits; specifically, plaintiff alleged that pursuant to the federal common law of estoppel under ERISA he was entitled to be paid these benefits. Hein was 54 years old and had 37 years of service with his employer when he decided to retire early. Under the applicable plan, an individual had to be at least 55 years old with 35 years of service to obtain unreduced early retirement benefits. However, Hein argued that although the applicable plan's language did not bestow on him a right to unreduced early retirement benefits, he nevertheless claimed he reasonably relied upon an alleged misrepresentation he received in a written report from his employer's agent and actuary.[21]

The Third Circuit disagreed with Hein, concluding that he could not have reasonably relied on, at most, a possibly misleading letter from the benefits department calculating his likely future benefits, "especially in the face of a written Plan document that clearly sets out the requirements to qualify for benefits." *Id.* at 222. Moreover, noting that Hein "was in possession of the written Plan document and SPD notifying him of the conditional nature of his benefits," the Third Circuit reaffirmed that "a participant's reliance on employer representations regarding benefits may never be 'reasonable' where the participant is in possession of a written document notifying him of the conditional nature of such benefits." *Id.* (quoting *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,* 58 F.3d 896, 908 (3d Cir.1995)).

c. *"Extraordinary circumstances"*

■ "Extraordinary circumstances" require a showing of "affirmative acts of fraud or similarly inequitable conduct by an employer" such that it appears that the employer sought to profit at the expense of its employees. *Kurz,* 96 F.3d at 1553. *See also Jordan v. Federal Exp. Corp.,* 914 F.Supp. 1180, 1191 (W.D.Pa.1996) ("[r]eviewing the

applicable precedent of our Court of Appeals, nothing short of demonstrable bad faith, affirmative misrepresentation or concealment of ERISA pension benefits or rights with knowledge that the participants or beneficiaries might be misled has sufficed to demonstrate the necessary 'extraordinary circumstances.' ") Moreover, in *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155 (3d Cir.1990), the Third Circuit, in affirming a grant of summary judgment, found, *inter alia,* that an alleged misrepresentation that went beyond the terms of the plan at issue did not "colorably" present any "extraordinary circumstances." *Id.* at 1165 n. 10.

■ In this case, plaintiff has failed to establish a valid equitable estoppel claim against the defendants.[22] Defendants point out that Gramm was in possession of written documentation (the SPD) that advised him that his accrued pension benefit would be subject to an early retirement discount. Consequently, he could not have reasonably relied on the original 100% lump-sum cash-out amount of $543,203.54. *See Hein,* 88 F.3d at 222 (retiree could not have relied on misleading letter from benefits department calculating future benefit as "employer representations regarding benefits may never be 'reasonable' where the participant is in possession of a written document notifying him of the conditional nature of such benefits.") (quoting *In re Unisys Corp.,* 58 F.3d at 908).

Gramm claims he was not in possession of a SPD for the Pension Plan. Gramm Dep. at 39–41 (attached to Pla. Ex. B). However, defendants argue that the record belies Gramm's assertion. Specifically, Gramm testified at his deposition that he previously had a copy of the SPD for the Pension Plan and that he had received documentation regarding his benefits at Bell Atlantic, although "that was part of [his] office at Bell Atlantic,

**21.** In the Spring of 1992, Hein requested and received from the pension plan administrator an estimate of his monthly benefit in the event he retired on January 1, 1993. On December 31, 1992, Hein retired. In January 1993, Hein requested the unreduced early retirement benefits that he claimed were due him under the plan. In February 1993, his request was denied and he was awarded reduced retirement benefits of ap-

proximately one third the amount he would have received with the unreduced early retirement benefit. 88 F.3d at 213–14.

**22.** This Court need not discuss whether or not the mistake about Gramm's lump-sum cash-out amount was a "material" fact as the parties do not dispute this point.

and he left those documents for his successor." Gramm Dep. at 41–42 & 43–44 (attached to Def. Ex. BB). Moreover, Bell Atlantic distributed early retirement materials to all Bell Atlantic managers, including those on rotation at Bellcore. Def. Ex. DD at 33, 64–65; Def. Ex. O at 13. In addition, and most important, Gramm concedes that as of November 1992 he was aware that under the 1992 FMP the early retirement discount was not waived and that it applied to him. Def. Ex. U ¶ 14.

However, regardless of whether or not Gramm in fact had received written documentation advising him that his pension calculation would be subject to an early retirement discount, it is undisputed that defendants informed Gramm that his 100% cash-out amount would be discounted. Gramm received verbal confirmation of the discount (20) twenty days before his effective retirement date and only (8) eight days after he was told that he could retire under the 1992 FMP—i.e., even though he had missed the December 7, 1992 deadline and filed the application on December 15. Moreover, when Geraldine Bell from the Claims Committee informed Gramm of the miscalculation on March 11, 1993, she also told him that he did not have to proceed with retirement and that he would be able to continue in Bell Atlantic's employ. Nevertheless, with full knowledge (as of March 15, 1993) that he would receive $488,885.57 rather than $543,203.54, Gramm chose not to change his plans and proceeded to execute formally his FMP Early Retirement Application on April 1, 1993. Therefore, given that Gramm knew before he retired that he would not receive $543,203.54 as his lump-sum distribution, he has not demonstrated to the Court the requisite reasonable detrimental reliance for an estoppel claim.

■ However, assuming, *arguendo*, that Gramm could prove that he reasonably and detrimentally relied upon the 100% cash-out figure of $543,203.54, his equitable estoppel claim fails because he cannot establish the defining element of an equitable estoppel claim under ERISA—"extraordinary circumstances." *See Kurz* 96 F.3d at 1553 ("[e]x-

traordinary circumstances" require a showing of "affirmative acts of fraud or similarly inequitable conduct by an employer" such that it appears that the employer sought to profit at the expense of its employees.); *see also Jordan*, 914 F.Supp. at 1191 ("[r]eviewing the applicable precedent of our [Third Circuit] Court of Appeals, nothing short of demonstratable bad faith, affirmative misrepresentation or concealment of ERISA pension benefits or rights with knowledge that the participants or beneficiaries might be misled has sufficed to demonstrate the necessary 'extraordinary circumstances.' ")

Here, Gramm has presented no evidence which supports an inference of bad faith and/or fraudulent conduct on the part of any defendant. Gramm claims that Bell Atlantic's "repeated" misrepresentations of his lump-sum cash-out amount rise to the level of bad faith to support a finding of "extraordinary circumstances". However, these alleged misrepresentations stem from the recirculation of a single document which Gramm happened to receive on three separate occasions: (1) when he received his first pension calculation via facsimile on November 23, 1992; (2) when he received the same document in the mail on December 17, 1992; and (3) when, in response to Gramm's inquiry about the IRS 415 Limits, the Claims Committee added the 415 Limits to the identical pension calculation summary sheet and sent it back to Gramm. Thus, Gramm has not presented a case of "repeated misrepresentations" by the defendants but rather the recirculation of a single document. In short, the miscalculation of Gramm's 100% cash-out amount was a simple, albeit unfortunate, mistake, which is devoid of any "extraordinary circumstances." Most important, Gramm learned of the discount calculation before he chose to retire. Finally, Gramm argues that he could not have returned to his position at Bellcore after making public his decision to retire on March 3; however, there is no evidence in the record to support this claim other than Gramm's bald assertions during his deposition. In sum, Gramm cannot recover under a principle of equitable estoppel

against the defendants.[23] Accordingly, Gramm's equitable estoppel claim against the defendants is dismissed and summary judgment on this claim is granted to the defendants.

### 2. *Breach of Fiduciary Duty*

■ Although employers are not subject to ERISA's fiduciary duties, plan administrators under ERISA are required, among other things, "to discharge [their] ... duties 'solely in the interests of the participants and beneficiaries.'" *Fischer,* 994 F.2d at 132 (quoting 29 U.S.C. § 1104(a)(1)); *see also Bixler v. Cent. Pa. Teamsters Health–Welfare Fund,* 12 F.3d 1292, 1299 (3d Cir.1993). Indeed, "once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance." *Id.* at 1300.

■ However, a mistake in calculating pension benefits does not constitute willful misconduct or bad faith sufficient to support a breach of fiduciary duty claim. *See Kuehl v. Chrysler Pension Plan,* 895 F.Supp. 1147, 1155 (E.D.Wis.1995) (dismissing plaintiff's breach of fiduciary duty claim based on alleged reliance on an erroneous credited service determination in taking early retirement because a breach of fiduciary duty requires wilful or bad faith conduct and all plaintiff could show was a mistake); *see also Burke v. Latrobe Steel Co.,* 775 F.2d 88, 91 (3d Cir. 1985) ("[T]rustees do not breach their fiduciary duties by interpreting the [benefits] plan in good faith, even if their interpretation is later determined to be incorrect."); *Bernatowicz v. Colgate–Palmolive Co.,* 785 F.Supp. 488, 494 (D.N.J.1992) (Plaintiffs "have neither alleged nor produced any evidence of

bad faith by [Defendant] ... Plaintiffs here are attempting to take advantage of [Defendant's] mistake which, upon discovery, was quickly corrected."), *aff'd,* 981 F.2d 1246 (3d Cir.1992); *Totoro v. H.A. De Hart & Son, Inc.,* No. CIV.A.92–3499, 1994 WL 114562, *4 (D.N.J. March 29, 1994) ("[i]f a fiduciary makes a representation based upon a good faith, albeit erroneous interpretation [of the plan], ERISA's fiduciary provisions are not violated."), *aff'd,* 39 F.3d 1171 (3d Cir.1994).

As with the analysis of equitable estoppel, the Court finds that a mistake in calculating pension benefits does not constitute the willful misconduct or bad faith sufficient to support a breach of fiduciary duty claim. Rather, the record makes clear that at all times the defendants acted in good faith, albeit at first mistakenly, when they provided Gramm with information about his retirement benefits. Accordingly, Gramm's breach of fiduciary duty claim is dismissed and summary judgment on this claim is granted to the defendants.

### 3. *Money Damages*

In *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255–60, 113 S.Ct. 2063, 2067–71, 124 L.Ed.2d 161 (1993), the Supreme Court concluded that money damages—as opposed to equitable relief—are not recoverable under 29 U.S.C. § 1132(a)(3) of ERISA. Rather, Section 1132(a)(3) authorizes a court to award only traditional forms of equitable relief, such as an injunction or an order providing for the restitution of ill-gotten gains from a breach of fiduciary duty. *Id.* at 256, 113 S.Ct. at 2069 ("equitable relief" refers "to those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."); *see also Varity Corporation v.*

---

**23.** Gramm quotes from *Fischer I* to make the argument that it matters not whether the misrepresentation is knowingly or negligently made. 994 F.2d at 134. Gramm, however, has misconstrued the Court's opinion. First, the Court in *Fischer I* is discussing what is a "material misrepresentation" in its discussion on breach of fiduciary duty not promissory estoppel. Second, the statement by the Court in *Fischer I* is, at best, dicta. Indeed, the quote is actually from another case and merely referred to by the Court in

*Fischer I* in its discussion about material misrepresentation. The exact quote is: "In Berlin, by contrast, the 'pivotal allegation' of the complaint was that Michigan Bell had 'either knowingly or negligently made material misrepresentations' regarding a change to the plan during a period of time in which the change was 'under consideration.' *Berlin,* 858 F.2d at 1160, 1163. The same is true here." This quote fails to support plaintiff's assertion.

*Howe,* 516 U.S. 489, ——, 116 S.Ct. 1065, 1076, 134 L.Ed.2d 130 (1996) ("compensatory and punitive damages are not 'equitable relief' within the meaning of subsection three [—i.e., section 1 132(a)(3) of ERISA.]"); *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,* 57 F.3d 1255, 1269 (3d Cir.1995)[24] ("retirees are not entitled to money damages for a breach of fiduciary duty.")[25]

The same analysis regarding damages recoverable under section 1132(a)(3) of ERISA applies to claims for possible adverse tax ramifications which plaintiffs may seek for a breach of fiduciary duty claim under ERISA. *Kemmerer v. ICI Americas Inc.,* 70 F.3d 281, 289 (3d Cir.1995) ("it is difficult to see how such damages [adverse tax consequences arising out of a plan termination] can be regarded as claims for equitable relief under section 1132(a)(3).")

■ In this case, all of the relief Gramm prays for in his Complaint constitutes legal, not equitable, relief. In Count I, he seeks $54,317.97, representing the difference between the 100% lump-sum cash-out amount upon which he claims to have relied and the corrected pension calculation that he received on March 15, 1993. Although Gramm recognizes that he is entitled to recover equitable relief under Section 1132(a)(3)(B) of ERISA, he claims that the compensatory, money damages he seeks are "appropriate equitable relief" because the sums he requests are designed to restore him to the *status quo ante.* Pla. Brief at 24–26 (citing *In re Unisys Corp.,* 57 F.3d at 1269 (deeming "equitable" plaintiff-retirees' request for restitutionary reimbursement for back benefits and restoration of the status quo by rescinding the retirees' retirement agreements)). In short, under the guise of equitable relief,

Gramm is attempting to convince this Court to treat him as though he timely filed his FMP application, as though he was entitled to a lump-sum pension of $543,203.54 and as though this were a case where repeated and systematic misrepresentations were made to Gramm by individuals throughout Bell Atlantic and its various affiliates and/or related entities. However, given that Gramm did not file his FMP application on time and that all the evidence in this case shows that, although Gramm was given incorrect information, he was treated fairly and in accordance with Plan documents, Gramm is not entitled to recover monetary relief under Section 1132(a)(3) of ERISA.

■ In Count II of the Complaint, Gramm seeks to recover the $6,339.00 in additional taxes that he claims he would not have had to pay but for defendants' alleged delays in deciding that he could retire under the 1992 FMP. However, the same analysis applies to his claim for adverse tax consequences as applies to his claim for monetary relief. These are consequential damages which are simply unavailable under Section 1132(a)(3) of ERISA, regardless of how one characterizes the payment. *Kemmerer,* 70 F.3d at 289 ("it is difficult to see how such damages [adverse tax consequences arising out of a plan termination] can be regarded as claims for equitable relief under section 1132(a)(3).")

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

## ORDER

This matter having been opened to the Court on a motion for summary judgment by

---

**24.** *Aff'd,* 58 F.3d 896 (3d Cir.1995).

**25.** Plaintiffs in this case correctly point out that although the Third Circuit in *In re Unisys Corp.* did hold that retirees are not entitled to money damages for breach of fiduciary duty under ERISA, it also deemed "equitable" plaintiff-retirees' request for restitutionary reimbursement for back benefits and restoration of the status quo (by rescinding the retirees' retirement agreements). 57 F.3d at 1269. However, the evidence presented to the Third Circuit in that case

showed more than mistake or even a single misrepresentation by a fiduciary to a plan beneficiary. In short, "[t]his is not a case where one or two low level benefits counselors told a few retirees that their benefits would continue for life. The message that medical benefits would last for life was confirmed repeatedly and systematically throughout the Sperry organization, by all levels of management, in writing and verbally." *Id.* at 1260.

Morgan Lewis & Bockius LLP, attorneys for defendants Bell Atlantic Management Pension Plan, Bell Atlantic Corporation, Bell Atlantic Network Services, Inc. and Bell Atlantic Separation Pay Plan and a cross-motion for summary judgment by Arthur C. Hopkins, Jr., attorney for plaintiff Walter P. Grammn; and the Court having considered the submissions of the parties, and good cause appearing,

IT IS on this 5th day of November, 1997,

ORDERED that defendants' motion for summary judgment be and hereby is granted; and

IT IS FURTHER ORDERED that plaintiff's cross-motion for summary judgment be and hereby is denied; and·

IT IS FURTHER ORDERED that a copy of this Order be served on all parties within seven (7) days of the date of this Order.