OPINION OF THE COURT
STAPLETON, Circuit Judge:
We are asked to review two orders granting partial summary judgment to the defendant in this ERISA action.* Review of one order requires us to interpret ERISA’s statute of limitations for breach of fiduciary duty claims, 29 U.S.C. § 1113. Review of the other requires us to determine whether the defendant fiduciary, if found to have made material misrepresentations to the plaintiffs, may be held accountable to those plaintiffs who relied to their detriment in making decisions other than decisions to retire.

I.

The factual and procedural history of this case is extensive and has been recounted elsewhere in detail.[1] We will explain only the status of the case as it comes to us on this appeal. This is a class action filed on behalf of retirees and disabled former employees of the Sperry, Burroughs, and Unisys Corporations (“retirees” or “plaintiffs”) against Unisys Corporation (“Unisys”). The dispute arises out of Unisys’ termination of its post-retirement medical plans for retirees and disabled former employees of the three companies.
On November 3, 1992, Unisys announced that it would terminate all of its preexisting medical benefit plans and replace them with a new one effective January 1, 1993.[2] Under the majority of the old plans, Unisys paid the entire medical premium for the lives of the retirees and provided continuing benefits for, their spouses. The new plan, in contrast, required the retirees to contribute escalating amounts to the cost of the premiums until January 1, 1995, at which time the retirees would become responsible for the entire premium.
Upon learning about this planned change in retirement benefits, retirees of Sperry, Burroughs, and Unisys separately filed eight different lawsuits against Uni-sys in four jurisdictions. See In re Unisys Corp., 837 F.Supp. 670, 672 n. 1 (E.D.Pa. *500 1993) (citing cases). These lawsuits were eventually consolidated. The retirees asserted three causes of action: breach of contract, estoppel, and breach of fiduciary duty.
The District Court granted summary judgment to Unisys on the breach of contract claims of the Burroughs and Unisys retirees, as well as on the estoppel and breach of fiduciary duty claims of all plaintiffs. See In re Unisys Corp., 837 F.Supp. 670 (E.D.Pa.1993). After a non-jury trial, the District Court granted judgment to Unisys on the contract claims of the Sperry retirees. See In re Unisys Corp., 1994 WL 284079 (E.D.Pa.).
During the trial, Unisys relied upon the fact that the applicable ERISA plans and summary plan descriptions (“SPDs”) contained a reservation of rights clause, reserving to Unisys the right to amend or terminate the plan at any time for any reason. The Sperry retirees advanced two theories in response. The first was that, when the applicable ERISA plans and summary plan descriptions described the health care benefits as “lifetime” benefits, this was intended to convey not only that the existing plan provided such benefits-for life but also that those benefits were vested, i.e., guaranteed against change. The second theory “was that although the SPDs used lifetime language to describe the benefits of [both] actives and retirees, Sperry had an unwritten ‘practice’ or ‘policy’ that once an individual retired, his/her benefits ‘locked in.’ Pursuant to this ‘lock in’ policy, the company could not reduce the medical benefits of retirees under any circumstances.” In re Unisys Corp., 1994 WL 284079 at *23.
At the seven day trial, the District Court admitted and considered extrinsic evidence tendered to show Unisys’ intent in promulgating the plans. The Court concluded that “lifetime benefits” as used in the plans and SPDs did not reflect an intent to create “vested” lifetime benefits, observing that “the plaintiffs conceded throughout the entire trial that an active employee’s benefits could always be awarded or terminated even though lifetime language was similarly used to describe that benefit ... implicitly recognizing] that lifetime is not' synonymous with vested.” Id. at *22. With respect to the plaintiffs’ second theory, the District Court found no evidence of a corporate practice or policy of “locking-in” benefits at retirement, noting that “not a single document eorroborat[ed] the testimony that an active/retiree distinction was in force.” Id. at *23.
The District Court’s ultimate conclusion at the end of the trial was that the plaintiffs lacked any contract right to lifetime benefits. The evidence that it heard and our intervening decision in Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir.1993), however, caused it to reconsider its summary judgment in Unisys’ favor on the Sperry plaintiffs’ breach of fiduciary duty claims. Ultimately, it reinstated those claims.[3] In the course of doing so, it pointed to evidence that (1) a “retirement counselor [had] responded to questions about the reservation of rights clause raised by potential retirees by saying that the language ‘pertained to active employees and not to retirees’ ”, and (2) a “personnel manager ... admitted to routinely telling inquiring employees that their post-retirement medical benefits were ‘guaranteed to them for life.’ ” The Court described this evidence as “just a small sample of the evidence on this issue.” In re Unisys Corp., 1994 WL 284079 at *34 n. 69. The Court also referenced evidence indicating “the highest levels of corporate management at Sperry, and later Unisys, recognized that employees might be under the mistaken belief that ‘lifetime’ meant forever.” Id. at *26. The Court explained its reinstatement decision by stating “that based on [this] evidence and the law in this circuit, it seems possible that at least some plaintiffs will be able to *501 sustain a [breach of fiduciary duty] claim.” Id. at *27[4] The Court declined, however, to reinstate the estoppel claims.
An interlocutory appeal followed, bringing before us the judgments in Unisys’ favor on the contract and estoppel claims and the decision to reinstate the breach of fiduciary duty claims. We found judgment appropriate on the breach of contract claim because the plans and SPDs provided unambiguous notice that lifetime medical benefits were not guaranteed, even for those who retired when the plans still provided for such benefits. On the unambiguous face of the plans, there was no right to lifetime medical benefits and extrinsic evidence should not be considered. See In re Unisys Corp. (“Unisys I”), 58 F.3d 896, 904-06 (3d Cir.1995).
We found that summary judgment was appropriate on the retirees’ estoppel claim as well:
Due to the unambiguous reservation of rights clauses in the summary plan descriptions by which Unisys could terminate its retiree medical benefit plans, the regular retirees cannot establish “reasonable” detrimental reliance based on an interpretation that the SPDs promised vested benefits. The retirees’ interpretation of the plans as providing lifetime benefits is not reasonable as a matter of law because it cannot be reconciled with the unqualified reservation of rights clauses in the plans.
Unisys I, 58 F.3d at 907.
In a separate opinion, we also upheld the District Court’s reinstatement decision. See In re Unisys Corp. (“Unisys II”), 57 F.3d 1255 (3d Cir.1995). We did so because the record suggested that some retirees might be able to show one or both of the following: (1) Unisys representatives counseled them that they had lifetime medical benefits without making reference to the reservation of rights clause, even though the representatives were aware that many employees mistakenly understood such counsel to mean that such benefits became vested at the time of retirement, see id. at 1260-61; and (2) Unisys representatives “affirmatively repre-sentad] to them that their medical benefits were guaranteed once they retired, when the company knew in fact this was not true.” Id. at 1266-67. We held that such conduct could constitute a breach of Unisys’ fiduciary duty as plan administrator.
After the breach of fiduciary duty claim was reinstated for all classes of plaintiffs, Unisys filed two motions for partial summary judgment. At the same time, the Sperry retirees submitted a motion for summary judgment on their claims. In its first motion, Unisys asked the District Court to grant it summary judgment against all Sperry retirees who retired before November 17, 1986 (six years before the first complaint by Sperry retirees was filed), and against all Burroughs retirees who retired before December 3, 1986 (six years before the first complaint by Burroughs retirees was filed). Unisys argued that these plaintiffs were barred from having their claims heard by ERISA’s statute of limitations, 29 U.S.C. § 1113.
In its second motion, Unisys sought to have the District Court grant summary judgment against all the plaintiffs who would not be able to prove that Unisys’ alleged breach of fiduciary duty led them to retire earlier than they otherwise would have (e.g., retirees who did not voluntarily retire). It argued that the only legally cognizable harm that could have resulted from its alleged misrepresentations was acceleration in individual decisions to retire. Other decisions made by the plaintiffs in reliance on Unisys’ misrepresentations, Unisys contended, should not be considered a “resulting harm” of the alleged breach of fiduciary duty.
In support of their summary judgment motion, the Sperry retirees argued that *502 there is no material dispute of fact as to any of the elements of their breach of fiduciary duty claims. Accordingly, they urged the District Court to grant them judgment as a matter of law.
The District Court granted Unisys’ motions for partial summary judgment and denied summary judgment to the Sperry retirees on their motion. Those retirees whose claims were extinguished by the partial summary judgments in Unisys’ favor then successfully moved under Fed. R.Civ.P. 54(b) for the entry of a final judgment on their claims so they could prosecute this appeal. See In re Unisys Corp., 189 F.R.D. 149 (E.D.Pa.1999).

II.

Section 1113 of ERISA, 29 U.S.C. § 1113 states, in its entirety:
No action may be commenced under this subchapter with respect to a fiduciary’s breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of
(1) six years after (A) the date of the last action which constituted part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
except that in the case of fraud or concealment, such actions may be commenced not later than six years after the date of discovery of such breach or violation.
29 U.S.C. § 1113.
The retirees argue that the District Court misapplied § 1113 in two respects. First, they argue that the Court erred in refusing to hold that under the “fraud or concealment” provision, the limitations period did not end until six years after they discovered the truth about their health care benefits. In the alternative, the retirees argue that even if we find the “fraud or concealment” provision inapplicable here, their claims are nevertheless timely under the six-year provision provided in § 1113(1)(A), which does not begin to run until “the date of the last action which constituted a part of the breach or violation.” The retirees contend that the date of the last action constituting part of the breach in this case was the date on which Unisys terminated the old benefit plans.

A. “Fraud or Concealment”

The purpose of the “fraud or concealment” provision is to codify a portion of the common law for ERISA breach of fiduciary duty claims. The issue raised by this provision is not simply whether the alleged breach involved some kind of fraud but rather whether the fiduciary took steps to hide its breach so that the statute should not begin to run until the breach is discovered. As we explained in Kurz v. Philadelphia Elec. Co., 96 F.3d 1544 (3d Cir.1996):
We now join our sister courts and hold that § [1113]’s “fraud and [sic] concealment” language applies the federal common law discovery rule to ERISA breach of fiduciary duty claims. In other words, when a lawsuit has been delayed because the defendant itself has taken steps to hide its breach of fiduciary duty, ... the limitations period will run six years after the date of the claim’s discovery. The relevant question is therefore not whether the complaint “sounds in concealment,” but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty.
Id. at 1552.
In Kurz, the alleged breach of fiduciary duty was the counseling of employees considering retirement about them retirement benefits without revealing that plan amendments to increase those benefits were under serious consideration. Because the “wrong ... was neither self-concealing nor actively concealed,” we ex *503 pressly reserved the issue, elsewhere debated, of “whether § [1113]’s six year period extends to both ‘self-concealing’ wrongs as well as ‘active concealment’ separate from the underlying wrongdoing.” Id. at 1552. In this context, “a self-concealing act is an act committed during the course of the original fraud that has the effect of concealing the fraud from its victims, [while a]ctive concealment refers to acts intended to conceal the original fraud that are distinct from the original fraud.” Wolin v. Smith Barney, Inc., 83 F.3d 847, 852 (7th Cir.1996). We held in Kurz that, regardless of whether the acts to conceal the breach occur in the course of the conduct that constitutes the underlying breach or independent of and subsequent to the breach, there must be conduct beyond the breach itself that has the effect of concealing the breach from its victims.
Here, as in Kurz, the issue is “not whether the complaint ‘sounds in concealment’ [i.e., not whether Unisys misadvised the retirees or counseled them without drawing attention to the reservation of rights clause], but rather whether there is evidence that the defendant took affimative steps [at any point] to hide its breach of fiduciary duty.” Id. at 1552 (emphasis added). Accordingly, if all that a plaintiff can show is that a counselor represented to him that he had guaranteed lifetime health care benefits or failed to give him accurate advice knowing that he believed he had such benefits, the fraud or concealment clause is inapplicable. In such cases, Unisys cannot be said to have taken affirmative steps, either as a part of the original breach of duty or thereafter, to cover up its breach. To the contrary, pursuant to the relevant provisions of ERISA, Unisys regularly distributed to its employees and retirees SPDs unambiguously explaining that the plan provisions calling for lifetime benefits could be amended at any time for any reason. As the District Court aptly put it,
While ... compliance with SPD disclosure obligations does not relieve a company of its fiduciary duty to avoid confusing participants about their benefits, this court will not hold that the truth about the “lifetime” benefits was concealed from participants when the information about the reservation of rights clause was unambiguously printed and distributed [by the company] in the SPD.
In re Unisys Corp., 957 F.Supp. at 635. Accordingly, we hold that the “fraud or concealment” provision of § 1113(2) is inapplicable to such cases.[5]
It is true, as retirees stress, that the doctrine of equitable tolling can under some circumstances prevent a limitations period from running in favor of a trustee on a breach of fiduciary duty claim even in the absence of concealment on his part. Bailey v. Glover, 21 Wall. 342, 22 L.Ed. 636 (1875), upon which plaintiffs heavily rely, provides one example of such circumstances. We conclude, however, that superimposing such equitable tolling rules on the statutory limitations scheme set forth in § 1113 would be inconsistent with congressional intent and the clear teachings of the Supreme Court.
In Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 360-62, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Court held that Rule 10(b)(5) misrepresentation claims are governed by § 9(e) and § 18(c) of the Securities and Exchange Act, each of which requires that 'suit be filed before the earlier of (a) one year from the discovery of the facts constituting the violation or (b) three years from “the violation” (or, in the case of § 18(c), from the date “the cause of action accrued”). The plaintiff there argued that the doctrine of equitable tolling should apply so that the *504 three-year limitations period would not start to run until the fraud was discovered even where no steps where taken by the defendant to conceal the fraud. The Court rejected that argument, finding it fundamentally at odds with the legislative scheme:
Plaintiff-respondents note, correctly, that “[t]ime requirements in lawsuits ... are customarily subject to ‘equitable tolling.’ ” Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), citing Hallstrom v. Tillamook County, 493 U.S. 20, 27, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). Thus, this Court has said that in the usual case, “where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.” Bailey v. Glover, 21 Wall. 342, 348, 22 L.Ed. 636 (1875); see also Holmberg v. Armbrecht, 327 U.S. 392, 396-397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Notwithstanding this venerable principle, it is evident that the equitable tolling doctrine is fundamentally inconsistent with the l-and-3-year structure.
The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling. One commentator explains: “[T]he inclusion of th'e three-year period can have no significance in this context other than to impose an outside limit.” ... Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.
Id. at 363, 111 S.Ct. 2773.
Although the specified duration of the limitations periods here is different, the legislative scheme is the same. Congress has determined that the cut-off date should be the earlier of (a) three years from the date of discovery of the claim and (b) six years from the violation. The only difference is that ERISA’s statute makes a single express exception for cases of “fraud or concealment.” Just as in Lampf, it would be fundamentally inconsistent with the statutory scheme here to accept the argument that the six-year period does not begin to run until discovery of the fraud, where the defendant has engaged in no wrongful activity beyond the original fraud on which the plaintiffs’ claims are based. Indeed, given the fact that Congress provided one express exception in § 1113(2), rejection of equitable tolling here follows a fortiori from the Supreme Court’s holding in Lampf
Similarly, we must decline plaintiffs’ invitation to apply their equitable tolling principles under the guise of construing § 1113(2)’s “fraud or concealment” provision. Accepting that invitation would require us to reject Kurz, and we are bound by that precedent. Contrary to plaintiffs’ suggestion, we do not read our subsequent case law as diluting the significance of Kurz in the context of this case.[6]
This does not end the matter, however. Unlike the District Court, we are unwilling to say based on the current record that no retiree will be able to successfully invoke the “fraud or concealment” provision of *505 § 1113(2). As we have noted, the District Court, when deciding to reinstate the breach of fiduciary duty claims, pointed to evidence suggesting that a “retirement counselor [had] responded to questions about the reservation of rights clause raised by potential retirees by saying that the language pertained to active employees and not to retirees.” In re Unisys Corp., 1994 WL 284079 at *34 n. 69. It seems to us entirely possible that advice of this character might well bring the fraud or concealment provision into play. If, for example, advice about the reservation of rights clause was given under circumstances such that an employee, who had consulted the SPD, was dissuaded from consulting counsel regarding that clause, we believe that the advice could appropriately be regarded as an affirmative step having the effect of concealing Unisys’ breach.
It would be inappropriate for us to decide at this stage whether “fraud or concealment” within the meaning of section 1113(2) has occurred in this case. We hold only that, drawing all permissible inferences against the party seeking summary judgment, there may be retirees who will be able to prove that Unisys counselors concealed their breach from them and that the limitation period did not foreclose suit until six years after the date they discovered the breach had occurred.

B. “Date of the last action which constituted part of the breach”

Having concluded that the six-year limitations period is applicable to plaintiffs’ claims, we must determine when that period began to run, i.e., “the date of the last action which constituted a part of the breach.” Unisys insists that this text focuses on the last action of. the fiduciary which was in violation of its fiduciary duty. While it does not maintain that the current record pinpoints the date upon which the last alleged misrepresentation was made, it correctly points out that insofar as decisions to retire are concerned, a retiree’s date of retirement is necessarily the last date upon which Unisys could have made a relevant misrepresentation or upon which a clarifying communication could have prevented detrimental reliance. Unisys therefore asks us to affirm the District Court’s grant of summary judgment against those members of the plaintiffs’ class who retired more than' six years before the date on which their case was originally filed, in 1992.
The retirees, on the other hand, contend that the date of the last action which constituted part of the breach was November 3, 1992, the date on which Unisys announced the termination of its “lifetime” plans. They argue that § 1113 must be interpreted in this manner because no actual harm occurred and thus no legitimate claim of breach of fiduciary duty arose until Unisys terminated the plans that it initially had misrepresented. Even though the retirees concede that the termination of the old plans was a non-fiduciary act, they nevertheless insist that a non-fiduciary act can constitute “part of the breach or violation” of fiduciary duty if it is the final act that gives rise to a cause of action.
In Adams v. Freedom Forge Corp., 204 F.3d 475 (3d Cir.2000), this Court recently reviewed the elements of a breach of fiduciary duty claim like that of the plaintiffs here. We found the controlling precepts in our prior decision in this case:
An employee may recover for a breach of fiduciary duty if he or she proves that an employer, acting as a fiduciary, made a material misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment.
Id. at 492, citing Unisys II, 57 F.3d at 1264.
Given these elements of a claim for breach of fiduciary duty in this context, it necessarily follows that any breach that may have occurred was completed, and a *506 claim based thereon accrued, no later than the date upon which the employee relied to his detriment on the misrepresentations. Surely, any employee who sought counsel and who took early retirement based on Unisys’ express assurance that she possessed guaranteed lifetime health care, thereby reducing the amount of pension she would otherwise receive, could bring suit immediately and secure rescission of her retirement or some other appropriate equitable relief.[7] Accordingly, it seems clear to us that the six-year period for such plaintiffs commenced no later than the respective dates of their retirements.[8]
We therefore agree with the District Court that the denial of free health care coverage was not an element of the plaintiffs’ claim. As the District Court pointed out, the alleged breach of fiduciary duty here concerned the counsel allegedly given or not given, and there is no causal nexus between that counsel and the denial of free health care coverage. In re Unisys Corp., 957 F.Supp. at 639. If Unisys had provided clear and accurate counsel, some retirements may not have occurred when they did, but there is no reason to believe retirees would now have free coverage. As the District Court held, Unisys had a right to terminate free health care coverage, and it exercised that right in a non-fiduciary capacity. Id. at 638.[9]
It is not clear to us, however, that the claims of all Sperry retirees who retired before November 17, 1986, and all Burroughs retirees who retired before December 3, 1986, are barred. While the primary theory of liability being asserted here is clearly that many relied on the misrepresentations to their detriment by deciding to take voluntary retirement, as we explain hereafter, Unisys has not persuaded us that this is the only viable theory of liability. It may well be that retirees *507 who retired before those dates relied to their detriment in making other decisions after those dates. Accordingly, the summary judgment entered by the District Court was overbroad and must be reversed. Summary judgment for Unisys would be appropriate, however, with respect to those who assert claims based solely on retirement decisions made more than six years before suit was filed.

III.

Unisys argues that an essential element of the breach of fiduciary duty claim recognized in our prior opinion is a voluntary decision to retire made in reliance on a mistaken view that health care benefits were guaranteed for life. It necessarily follows, according to Unisys, that it is entitled to summary judgment with respect to anyone who was mandatorily retired at age 65, left the company’s employ involuntarily because of disability, or for some other reason made no such decision.
In response, the plaintiffs insist that the category of claims we earlier recognized is not limited to claims based on retirement decisions and have submitted affidavits from members of the class who allege that, in reliance on their belief that they had guaranteed lifetime benefits, they declined other employment opportunities, chose to forego the opportunity to purchase supplemental health insurance, or made other important financial decisions for their retirement.
The District Court agreed with Unisys and granted summary judgment against all who would be unable to prove a voluntary decision to retire. We perceive no principled basis, however, for so cabin-ing our holding in Unisys II. After all, in Bixler, upon which we heavily relied there, the decision resulting from the breach of fiduciary duty was a decision on whether to purchase COBRA insurance rather than a decision regarding retirement. See Bixler, 12 F.3d at 1301-03; see also Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 237-39 (3d Cir.1994) (fiduciary’s misrepresentations about a new life insurance plan caused plaintiff to fail to obtain adequate coverage). It is, of course, not clear that the plaintiffs who rely upon these affidavits will be able to establish their entitlement to relief, but we decline Uni-sys’ invitation to adopt an across the board prohibition of relief based upon reasonable reliance in contexts other than retirement decisions.
Understanding the import of our decision in Unisys II requires a recognition of the procedural posture in which that appeal arose. As we have noted, the District Court initially granted summary judgment to Unisys on the breach of fiduciary duty claim. See In re Unisys Corp., 837 F.Supp. at 679-80. It was only after the trial and our decision in Bixler that it decided to reinstate that claim. See In re Unisys Corp., 1994 WL 284079 at *25-27. It was the propriety of that decision to reinstate, and only the propriety of that decision, that was before us as a certified issue in that interlocutory appeal. We held that reinstatement was appropriate and remanded “for further proceedings.”[10] Unisys II, 57 F.3d at 1269.
*508 It is true, as Unisys stresses, that our opinion addressed the issue for decision in the context of the plaintiffs having relied to their detriment in making decisions to retire. That was our focus because that was the plaintiffs’ primary contention, and the absence of any reference to other kinds of reliance can hardly be taken as a ruling that other forms of reliance could not provide a valid basis for relief. We therefore reject the District Court’s view that Unisys II, as a matter of law, limits recovery on the breach of fiduciary duty claims to claims based on voluntary decisions to retire. Moreover, we have found no other precedent supporting that position.
The District Court expressed two related concerns in the course of granting summary judgment to Unisys on the claims not based on voluntary retirement decisions: a concern about opening Unisys to unjustifiably broad relief and a concern about inconsistency with this Court’s disposition of the estoppel claims. It expressed those concerns as follows:
In allowing the breach of fiduciary claims to go forward, this court and the Court of Appeals for the Third Circuit have essentially held that reliance by the employees on the misrepresentations of Unisys, while not “reasonable reliance” for purposes of a claim of equitable es-toppel, can still support a claim for breach of fiduciary duty. In a sense, the rulings in this case excuse the plan participants from their failure to read their summary plan documents in the limited context of making the retirement decision: because of the breach of duty, the employees may have retired earlier than they otherwise would have, and even if their reliance on the misrepresentations was not reasonable, the reliance supports a breach of fiduciary duty claim because it was at least partially the fault of Unisys.
The “unreasonable” reliance excused here is narrow, and supports a breach of fiduciary duty claim only in certain limited circumstances-in this case, where the employees retired earlier than they might have had they not been misled by the lifetime misrepresentations. This court believes that expanding the concept of “resulting harm” in this case to the types of reliance alleged in the retirees’ affidavits would create an unjustified expansion of the narrow holdings of this court, and would by indirection reinstate the claims for equitable estoppel.
In re Unisys Corp., 957 F.Supp. at 644.
The District Court’s characterization of our decision in Unisys II as excusing “unreasonable reliance” is inappropriate. We did not there hold that the existence of the SPD was irrelevant to the analysis of the breach of fiduciary duty claims. An employer, even when acting in a fiduciary capacity, is not responsible for harm that is. not reasonably foreseeable. As we pointed out in our prior opinion in this case and in Adams, in order for relief to be afforded, the conduct of the fiduciary must be such as to create a “substantial likelihood that it would mislead a reasonable employee in making [a decision to change his or her position].” Unisys II, 57 F.3d at 1264. Any determination of whether Unisys conveyed a message that was “materially misleading” in this sense cannot simply ignore the existence of the SPD. Rather, what we held on this score in Unisys II was as follows: (1) that the SPD did not as a matter of law satisfy Unisys’ fiduciary responsibility; and (2) that there was evidence from which a trier of fact could conclude that Unisys should have foreseen that its conduct with respect to at least some of the class would cause reasonable employees to rely to their detriment, despite the existence of the SPD. Whether that is the case depends, of course, on the content of the message conveyed and the context in which it was conveyed.
We did recognize in Unisys II that there are situations in which a fiduciary *509 can reasonably foresee unreasonable reliance and, accordingly, be held accountable. Bixler, 12 F.3d 1292 (3d Cir.1994), provides an example. Mrs. Bixler there acknowledged that she had received a notice from the fiduciary concerning a right to apply for COBRA health care insurance, but she mistakenly believed that she and her husband were not eligible to do so because he was already hospitalized. Shortly after Mr. Bixler’s death but still well within the period when she could have elected to secure COBRA coverage, Mrs. Bixler called the fiduciary’s representative to inquire about a death benefit. The fiduciary accurately informed her that there was no death benefit but failed to advise her that she could receive reimbursement for her husband’s considerable hospital expenses by signing and returning the COBRA notice the fiduciary had sent to her husband. We concluded that there was evidence from which a trier of fact could infer that the fiduciary was aware of the Bixlers’ circumstances and of Mrs. Bix-ler’s mistaken belief about the unavailability of COBRA insurance. See id. at 1302-OS. In these circumstances, we held that the trier of fact could find a breach of fiduciary duty, and we did so without inquiring whether Mrs. Bixler’s understanding of the COBRA notice was reasonable or unreasonable.
Our decision in Bixler is based on a fiduciary’s duty to deal fairly with its beneficiary and, more specifically, “to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection.” Bixler, 12 F.3d at 1300, quoting Restatement (Second) of Trusts, § 173, comment (d) (1959). As we noted in Unisys II, there is evidence here with respect to some employees from which a trier of fact could conclude that specific inquiries were made giving notice to Unisys representatives that the employees could be expected to make retirement decisions based on the mistaken belief that their health benefits were guaranteed for life. See Unisys II, 57 F.3d at 1266. Under Bixler, in these situations, a duty to advise of the reservation of rights clause would arise, and the existence of the SPD would not be relevant.
We also recognized in Unisys II that a duty to advise affirmatively of the reservation of rights clause might have arisen even in the absence of beneficiary-specific information concerning confusion or mistake. The evidence then of record, we suggested, could permit a finding that Unisys had acquired knowledge of confusion so pervasive that a reasonable fiduciary would have done more than simply rely on its SPD. See id. We did not, however, require clairvoyance on the part of the fiduciary. The law requires only that a fiduciary deal fairly with his beneficiaries and, in doing so, that it “exercise such care and skill as a man of ordinary prudence would exercise” in his own affairs. Restatement (Second) of Trusts, § 174.
A judgment remains to be made as to whether a reasonable fiduciary in Unisys’ position would have foreseen that its conduct towards the various plaintiffs would result in important decision making on their part based on a mistaken belief that they possessed guaranteed lifetime benefits. In situations involving actual knowledge on the part of Unisys that an employee was about to rely on such a misunderstanding, we agree with the District Court that the existence of the SPD is irrelevant. In other situations, however, the fact that Unisys had distributed what purported to be an authoritative guide to benefits is one of the circumstances that must be considered in passing this judgment on its conduct.
We do not believe holding Unisys to the kind of fair dealing standard we recognized in Unisys II will impose an unfair burden upon it even if it is held to that standard in the context of decisions other than voluntary retirement. We stress, however, that the character of the decision made and reliance claimed will, of *510 course, play an important role in determining the extent of Unisys’ fiduciary duty and whether that duty was breached. We also note that the District Court has not yet addressed what equitable remedies may be available to members of the class. Common law damages are not recoverable under ERISA for a breach of fiduciary duty, and this fact may also limit Unisys’ exposure. See Mertens v. Hewitt Assoc., 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).
Our insistence on reasonable foreseeability as a prerequisite to legal responsibility on the breach of fiduciary duty claims is not inconsistent with our resolution of the plaintiffs’ estoppel claims in Unisys I. As our earlier quotation above from our prior opinion demonstrates, those claims were predicated on an allegation that the plaintiffs had relied to their detriment on the text of the plan and SPD. See 58 F.3d at 907, supra. On that occasion, we summarized our holding as follows:
Because our decisions require that any detrimental reliance on plan language also be “reasonable,” our finding that the [reservation of rights clauses] are unambiguous undercuts the reasonableness of any detrimental reliance by the retirees. Accordingly, we hold that the district court did not err in concluding, on summary judgment, that the retirees’ estoppel claim failed as a matter of law.
Unisys I, 58 F.3d at 908. The claim here, however, is not that the retirees relied on the text of the plans or the SPDs, but rather that they relied on counseling which they received from Unisys representatives.

TV.

The District Court’s order dated March 10, 1997, will be reversed and this matter will be remanded to the District Court for further proceedings consistent with this opinion.

 These two orders were issued by the Honorable Edward N. Cahn, former Chief Judge of the United States District Court for the Eastern District of Pennsylvania. In re Unisys Corp., 957 F.Supp. 628 (E.D.Pa.1997). The Honorable Bruce W. Kauffman, United States District Judge for the Eastern District of Pennsylvania, subsequently certified the order as final and appealable under Federal Rule of Civil Procedure 54(b). In re Unisys Corp., 189 F.R.D. 149 (E.D.Pa.1999).

. See e.g., In re Unisys Corp., 57 F.3d 1255, 1257-61 (3d Cir.1995), cert. denied sub nom., Unisys v. Pickering, 517 U.S. 1103, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996); In re Unisys Corp., 957 F.Supp. 628, 631-32 (E.D.Pa. 1997); In re Unisys Corp., 837 F.Supp. 670, 672 (E.D.Pa.1993), aff'd, 58 F.3d 896 (3d Cir.1995).

. In September 1986, Sperry Corporation and Burroughs Corporation merged to form Uni-sys Corporation. Following the merger, Uni-sys maintained the preexisting medical benefit plans of its component corporations until 1989. That year, Unisys created its own Post Retirement and Extended Disability Medical Plan to cover employees who retired after April 1, 1989, most of whom were former Sperry and Burroughs employees. Even with the addition of the new plan, however, Unisys kept its predecessor plans intact.

. After we affirmed this decision, the District Court reinstated the similar claims of the Burroughs and Unisys retirees as well. In re Unisys Corp., 1996 WL 455968 (E.D.Pa.).

. At the same time, the Court stressed that the breach of fiduciary duty claim was not before it and that it was "not holding that a breach did in fact occur.” Id. at *27.

. Notwithstanding plaintiffs’ argument to the contrary, we do not regard the fact that the alleged misrepresentations were repeated (as opposed to isolated) as satisfying the requirement that there be affirmative steps to conceal beyond the misrepresentations themselves.

. In particular, plaintiffs point to this Court's decision in Adams v. Freedom Forge Corp., 204 F.3d 475 (3d Cir.2000). As we expressly noted, no statute of limitations issue was before us in that appeal. Although a footnote in that case makes reference to "issues left unresolved in Kurz about the anatomy and scope of the fraudulent concealment doctrine,” i.e., whether ERISA's statute of limitations applies to "self-concealing” as well as "active concealment” cases, id. at 494 n. 5 (full citations and internal quotations omitted), we do not read Adams as purporting to second guess the Kurz rule that the "fraud or concealment” provision requires “affirmative steps to hide [the] breach of fiduciary duty.” Kurz, 96 F.3d at 1552.

.The dissenting opinion assumes that an employee misled by Unisys about guaranteed life care benefits would be entitled to a remedy taking into account his or her expectancy interest in such benefits rather than, or perhaps in addition to, the economic loss suffered when he changed position in detrimental reliance on Unisys' conduct. The District Court has not yet addressed what remedies may be available to a retiree who establishes a breach of fiduciary duty, and we, of course, express no opinion on the availability of expectancy compensation or any other form of relief. We do note, however, that there is a material difference between the value of a health care plan with guaranteed lifetime benefits and the value of a health care plan with benefits that can be canceled at any time for any reason. Accordingly, if an employee were entitled to an expectancy remedy as a result of retiring after being told he had the former, when in fact he had the latter, he would be entitled to bring suit immediately for the difference between the value he was promised and the value he received or for specific performance of the promise to provide a plan or policy with guaranteed lifetime health care. The dissent is correct, however, that a retiree who chose not to bring a suit for guaranteed lifetime benefits or the value thereof, and who died before any change in the plan, would serendipitously have wound up in the same position he would have been in had the misrepresentation been true. Accordingly, his estate would have no claim based on lost health care benefits.

. If the “date of the last action which constitutes a part of the breach” is the date of Unisys’ last misrepresentation, it is theoretically possible that the statute could begin to run before a retiree could seek relief from a court since detrimental reliance is a necessary element of a breach of fiduciary duty of this kind. We need not decide, however, whether the six year period can begin to run before a breach of fiduciary duty claim accrues. As we have noted, the District Court and the parties have regarded the date of the last relevant misrepresentations and the date of detrimental reliance as being the same date and the only issue briefed is whether that date or the date of the denial of free health care coverage is the legally relevant date. Accordingly, we hold only that the statute began to run no later than the date of alleged detrimental reliance.

. It is only fortuitous that the fiduciary who did the alleged counseling here was the employer who exercised its right to change the plans. If Unisys had not been the administrator of the plans and an independent administrator had breached its fiduciary duty by mis-counseling retirees, it would be even more clear that the plan amendments were not "the last action which constituted a part of the breach.”

. At times, the plaintiffs appear to read our opinion as, in effect, directing the entry of summary judgment in their favor on at least the voluntary decision to retire claims. We do not so read the opinion, and the District Court did not so read it. At that point, Unisys had been provided with no opportunity to build a trial or summary judgment record in opposition to Bixler claims, and any ruling on the merits of those claims would have been inappropriate. On remand, the District Court noted that the breach of fiduciary duty claims had not been before it during the trial on the contract and estoppel claims and that, when reinstating those claims, it had made no determination that any plaintiff had proven his breach of fiduciary duty claim. On the contrary, the District Court on remand quoted the following observations it had made at the time of reinstatement:
[B]ecause some plaintiffs have stronger cases than others based on their specific inquiries and the information given to them personally, the court finds that subclasses, and possibly even individual hearings, will be necessary to adjudicate these claims.
*508 In re Unisys Corp., 957 F.Supp. at 645.